# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3625
_____

United States of America

*Plaintiff - Appellee*

v.

Dorian Williams

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 15, 2012
Filed: August 30, 2012

_____

Before SMITH, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Dorian Williams appeals from his conviction and sentence for conveying false information about bombing a commercial aircraft in violation of 18 U.S.C. § 35(b) and conveying a threat and false information in interstate commerce about the destruction of life and property by explosives under 18 U.S.C. § 844(e). Williams challenges the constitutionality of the statutes under which he was convicted, the

district court's[1] denial of certain requested jury instructions, the sufficiency of the evidence at trial, the duplicity of his punishments in violation of the Double Jeopardy Clause, as well as the application of the career offender enhancement at sentencing. We affirm.

## I.    BACKGROUND

On January 15, 2010, Officer Michael Helldoerfer received an anonymous phone call while on duty at Lambert-St. Louis Airport.  The caller refused to identify himself and the source of his information, but informed the officer that a black man named Dorian would board Continental flight 5938 destined for Washington, D.C., carrying explosives.  Following the call the officer made the appropriate (and requisite) notifications according to protocol.  Airport officers and security personnel ultimately dispelled the threat by contacting an extensive list of people and agencies, checking flight schedules (flight 5938 was not going to D.C.), passenger lists (there was no passenger named Dorian on flight 5938), and a search of the interior of the flight (trained dogs made no indications for explosives on the aircraft).  The investigation then turned to locating the caller that made the threat, which lead to the arrest of Dorian Williams.

Williams was indicted for conveying false information about bombing a commercial aircraft, a violation of 18 U.S.C. § 35(b), and conveying a threat and false information in interstate commerce about the destruction of life and property by explosives, a violation of 18 U.S.C. § 844(e).  Prior to trial, Williams sought a dismissal of the indictment, claiming that the statutes under which he was charged were overbroad and unconstitutionally vague.  The district court denied the motion. During the jury trial, after the government rested, Williams moved for a judgment of

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

acquittal and renewed his motion to dismiss, both of which were denied. Williams did not present any evidence in his defense. At the jury instruction conference, Williams challenged several instructions as discussed in detail below. Following the jury's guilty verdict, Williams challenged the application of a career offender enhancement at sentencing.

## II.    DISCUSSION

### A.    Constitutionality of Charging Statutes

This court reviews de novo the district court's decision rejecting Williams' claim that §§ 35(b) and 844(e) are unconstitutional under the First Amendment overbreadth doctrine. United States v. Beale, 620 F.3d 856, 865 (8th Cir. 2010), cert. denied, 131 S. Ct. 1023 (2011). A "law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." United States v. Stevens, 130 S. Ct. 1577, 1587 (2010) (internal quotation omitted). In this determination, a court must first examine the statute, since "'it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.'" Id. (quoting United States v. Williams, 553 U.S. 285, 293 (2008)). Thereafter, the court must decide whether the statute, as construed, "criminalizes a substantial amount of protected expressive activity." Williams, 553 U.S. at 297.

Williams was indicted under the following federal statutes:

18 U.S.C. § 35(b):

Whoever willfully and maliciously, or with reckless disregard for the safety of human life, imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt or alleged attempt being made or to be made, to

-3-

do any act which would be a crime prohibited by this chapter or chapter 97 or chapter 111 of this title – shall be fined under this title, or imprisoned not more than five years, or both.

18 U.S.C. § 844(e):

Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

For purposes of § 35(b), and according to the indictment, the specific crime that Williams falsely and maliciously threatened to commit was the placing of a destructive device or substance upon a civil aircraft used, operated, and employed in interstate commerce, in violation of 18 U.S.C. § 32(a)(2).

In United States v. Alvarez, the United States Supreme Court recently discussed the constitutional limitations on content-based restrictions on speech. 132 S. Ct. 2537 (2012). Although not couched specifically as an overbreadth analysis under the First Amendment, Alvarez greatly informs the instant discussion. "'[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" Id. at 2543 (quoting Ashcroft v. Am. Civil Liberties Union, 535 U.S. 564, 573 (2002)). Accordingly, the Constitution demands that content-based restrictions on speech, such as we face here under §§ 35(b) and 844(e), be presumed invalid, and that the government bears the burden of showing their constitutionality. Id. at 2543-44. Indeed, only discrete categories of content-based restrictions on speech have been permitted to-date: (1) advocacy intended, and

likely, to incite imminent lawless action, (2) obscenity, (3) defamation, (4) speech integral to criminal conduct, (5) so-called "fighting words," (6) child pornography, (7) fraud, (8) true threats, and (9) speech presenting some grave and imminent threat the government has the power to prevent. Id. at 2544. "These categories have a historical foundation in the Court's free speech tradition. The vast realm of free speech and thought always protected in our tradition can still thrive, and even be furthered, by adherence to those categories and rules." Id.

In response to Williams' constitutional challenge in this action, the government first contends that §§ 35(b) and 844(e) fall directly within one of those categories already held constitutionally permissible–the restriction of true threats–and thus Williams' statements are not protected by the First Amendment and the statutes proscribing the speech are constitutional. See Watts v. United States, 394 U.S. 705, 708 (1969) (describing what would *not* be considered a "true threat," including political hyperbole; and uninhibited, robust and caustic debate, which might include vituperative and abusive language, wholly dependent on the context in which spoken); see also United States v. Mabie, 663 F.3d 322, 330 (8th Cir. 2011) ("A 'true threat' is defined as a 'statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another.'" (quoting Doe v. Pulaski Cnty. Special Sch. Dist., 306 F.3d 616, 624 (8th Cir. 2002) (en banc)); United States v. Spruill, 118 F.3d 221, 228 (4th Cir. 1997) (defining "true threat" contemplated by 18 U.S.C. § 844(e) as a "serious threat as distinguished from words as mere political argument, idle talk or jest" (quotation omitted)).

Williams responds that his statements were not true threats, as that term is defined and applied. While Williams acknowledges that Mabie establishes that a "true threat" is determined from the point of view of a reasonable recipient, he urges the panel, and the court en banc as well, to reevaluate this holding in light of Virginia v. Black, 538 U.S. 343 (2003). He claims that in order for the statutes at issue to be applied constitutionally, there must be a finding that the speaker subjectively intended

to threaten when he made false statements. We decline Williams' invitation. <u>Mabie</u> fully contemplates <u>Black</u>. <u>Mabie</u>, 663 F.3d at 332 (reiterating that the objective test for determining whether a communication is a true threat, adopted by the Eighth Circuit post-<u>Black</u>, does not consider the subjective intent of the speaker). Sections 35(b) and 844(e) criminalize "true threats," as determined by the context of each situation. <u>See</u> <u>Spruill</u>, 118 F.3d at 228 ("[Section] 844(e) proscribes only 'true' threats."); <u>see also</u> <u>United States v. Viefhaus</u>, 168 F.3d 392, 395-96 (10th Cir. 1999) (recognizing that § 844(e) criminalizes true threats); <u>United States v. Leaverton</u>, 835 F.2d 254, 257 (10th Cir. 1987) (determining that § 844(e) contemplates only true threats and noting that "[i]n determining whether words were uttered as a threat, the context in which they were spoken must be considered.").

However, even though these statutes criminalize true threats, which put them in line with established and limited categories accepted as constitutional content-based restrictions, this does not complete our analysis. Williams' primary claim is that these statutes are too broad because a substantial number of their applications are unconstitutional, judged in relation to the statutes' plainly legitimate sweep. <u>See</u> <u>Stevens</u>, 130 S. Ct. at 1587. Williams claims these statutes prohibit the conveyance of all false information concerning an attempt to commit an unlawful act without regard to whom it is conveyed; the time or place it is conveyed; or whether air commerce, public business or individuals are in fact hindered or threatened. Accordingly, deduces Williams, these statutes do not require that the harm legislators sought to prevent, actually occurs.

As examples of protected speech that could potentially be swept into these criminal statutes rendering them overbroad, Williams highlights speech where a false statement causes no harm such as when a known pathological liar makes a false statement about planting a bomb, as well as purely private speech such as a person speaking with a friend at home. He also claims that the text of the statutes do not make an exception for playful, satirical, or dramatized false claims, which are clearly

protected under the First Amendment–like a young child yelling in the airport that he wants to go home and will blow up the plane if he cannot. The government responds that the statutes proscribe only knowingly false and malicious statements about the commission of serious crimes, and do so in a manner not likely to chill valid First Amendment interests.

Our initial determination that these statutes proscribe "true threats," resolves Williams' overbreadth claim on many fronts. The speech prohibited by §§ 35(b) and 844(e)–namely, false and malicious statements about the commission of serious crimes threatening life and real property–lies outside the scope of First Amendment protection. Congress's explicit inclusion of requisite mental states in these hoax statutes forecloses the potential for prosecution in the various scenarios suggested by Williams. Section 35(b) requires that the false information be conveyed "willfully and maliciously, or with reckless disregard for the safety of human life." 18 U.S.C. § 35(b). Section 844(e) requires that the criminalized threats be conveyed "willfully," or that the false information (known to be false) be conveyed "maliciously." 18 U.S.C. § 844(e). Too, in each instance, the false statement of fact must be made in a context where it has the propensity to inflict some public or private harm beyond the mere transmission of false information, regardless of whether the harm is actually inflicted. For example, the underlying crime supporting Williams' § 35(b) conviction in this case is the placement of a device or a substance upon or in proximity to an aircraft if such placing is likely to endanger the safety of the aircraft. 18 U.S.C. § 32(a)(2). And on its face, as relevant here, § 844(e) generally requires proof that the threat or false information concern an attempt or alleged attempt to kill, injure, or intimidate an individual, or damage or destroy real property by means of an explosive. Again, the elements of the statutes narrow the field as far as those who may potentially fall within their reach.

There is no general exception to the First Amendment for false statements, generally. Alvarez, 132 S. Ct. at 2544-45. But, unlike the Stolen Valor Act analyzed

-7-

in <u>Alvarez</u>, which targets falsity and nothing more according to the Court plurality, the instant statutes are akin to the categories of content-based restrictions listed previously. <u>Id.</u> The instant statutes are not crafted such that they lead to the broader proposition that false statements are unprotected when made to any person, at any time, in any context. <u>Id.</u> at 2546. The falsities governed here have no value in and of themselves, are necessarily injurious and do not "chill" otherwise valuable or protected speech. <u>Id.</u> at 2547-49 (holding that the Stolen Valor Act falters under First Amendment scrutiny given its sweeping reach without any clear limiting principle on the government power it instills). These statutes criminalize only those lies that are particularly likely to produce harm. <u>Id.</u> at 2554 (Breyer, J., concurring). To be sure, "[h]oax bomb reports have seriously disrupted the orderly operation of common carriers, jeopardizing the safety of personnel and passengers, and causing confusion, fear and panic." S. Rep. 87-1055 (1961). Congress responded to the highlighted problems by appropriately crafting statutes that criminalize only true threats. Sections 35(b) and 844(e) are certainly not examples of the government "orchestrat[ing] public discussion through content-based mandates," as that concern was recently discussed at length in <u>Alvarez</u>. 132 S. Ct. at 2550.

Sections 844(e) and 35(b) legitimately criminalize true threats and not protected expressive activity. Accordingly, the statutes under which Williams was convicted are constitutional.

### B.    Jury Instructions

At trial, because Williams argued that a "true threat" can only be determined based upon the subjective intent of the speaker, he sought a correlative instruction telling the jury that §§ 35(b) and 844(e) required proof not just that Williams intended to communicate a threat but that he did so with the intent to place the recipient in fear of bodily harm or death. The district court denied the proposed instruction. This court reviews a district court's decision to grant or deny a request for a particular jury

instruction under an abuse of discretion standard, taking into account the full context of the challenge.  United States v. Whitehead, 176 F.3d 1030, 1037 (8th Cir. 1999).

> A district court possesses broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity.  Our review is limited to whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.

McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 744 (8th Cir. 2010) (internal quotations omitted).  There was no abuse of discretion here.

The district court's ruling was not an abuse of discretion because it fully comports with Eighth Circuit precedent, noted above.  Mabie reiterates this circuit's adoption of an objective test for determining whether a communication is a true threat. 663 F.3d at 332.  Thus, the given instruction appropriately read as follows:

> Instruction number 20, The false information conveyed must be a serious expression distinguished from idle or careless talk or something said in a joking manner or in other words an actual threat.  A statement is an actual threat if it was made under such circumstances that an objectively reasonable recipient would construe it as a serious expression of an intent to inflict harm, loss, evil, injury, or injury to another person.  The essence of the offense is the willful transmission of a true threat.  It is not necessary that anyone actually intended to carry out the threat.

Williams further claims the district court abused its discretion in giving a jury instruction that defined "maliciously."  The instruction defining maliciously read:

> Instruction number 21, A defendant acts maliciously if he acts with intent to vex, annoy, or injure another or with an intent to do a wrongful act.  To act maliciously as the term is used in these instructions means to

act intentionally or with willful disregard of the likelihood that damage
or injury will result.

Williams requested that only the latter sentence be included in the instruction and that the inclusion of the additional "with an intent to vex, annoy, or injure another" language, lessened the government's burden of proof. The instruction given, however, comports with an instruction defining the word malicious approved in United States v. Sweet, 985 F.2d 443, 445 (8th Cir. 1993). Given our standard of review, its use was not an abuse of discretion.

And, finally, Williams challenges the district court's refusal to instruct the jury at all on the definition of "willfully." Again, Williams sought such an instruction to ensure that the jury would not convict him without considering whether he appreciated the threatening nature of his statement and his intention in conveying his message. Williams argued that an additional instruction on the definition of "willfully" would have provided some protection against this. The district court disagreed and the omission of this instruction was not an abuse of discretion. See id. at 444-45 (recognizing that § 35(b) requires a particular mental state but clarifies that it is not a "specific intent" statute where the defendant's knowledge that he is violating the law is an element of the offense). While the court could have instructed on the definition of willfully, its failure to do so was well within its discretion, especially given that maliciously had already been defined and the remaining instructions adequately addressed the appropriate mental states required for conviction for each particular crime. An additional instruction was unnecessary to provide the protection Williams sought. Taken together, the instructions accurately informed the jury of the mental states required for convictions under the offenses charged.

## C.   Double Jeopardy

Williams argues that post-conviction dismissal of count II is necessary to maintain Williams' Fifth Amendment right to protection from double jeopardy. Williams failed to raise this issue at trial.  He claims that he was convicted on two counts that required proof of nearly identical elements and thus that essentially the same crime was proscribed by different statutes.  "Multiplicity in charging an offense is reviewed de novo."  United States v. Carpenter, 422 F.3d 738, 747 (8th Cir. 2005). Because Williams did not raise this issue in the trial court, we review this claim for plain error–Williams must demonstrate that the error was not intentionally relinquished, that it is clear and obvious, that it affected his substantial rights, and that it was prejudicial.  United States v. Robertson, 606 F.3d 943, 950, 951-52 (8th Cir. 2010).  This claim also fails.[2]

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution is violated in a single proceeding only where multiple punishments are imposed for the same crime contrary to the legislature's intent.  United States v. Gamboa, 439 F.3d 796, 809 (8th Cir. 2006).  Simultaneous convictions under §§ 35(b) and 844(e), however, do not violate the Double Jeopardy Clause, as the two statutes contain elements not contained in the other.  Accordingly, the Blockburger test resolves the issue.  Blockburger v. United States, 284 U.S. 299, 304 (1932)

---

[2]The government also argues that Williams waived this argument by not raising it before the district court and thus we should decline to address it at all.  United States v. Honken, 541 F.3d 1146, 1154 (8th Cir. 2008).  Because there is no evidence in the record that Williams intentionally relinquished his double jeopardy claim (i.e., waived the claim), we will review his claim for plain error.  See United States v. Lara-Ruiz, 681 F.3d 914, 922 (8th Cir. 2012) ("The 'forfeiture' of a right arises from a failure to make the timely assertion of the right and limits appellate review to plain error.  In contrast, 'waiver' is the intentional relinquishment or abandonment of a known right, and a waived claim is unreviewable on appeal." (internal quotations and alteration omitted)).

(establishing that where each offense requires proof of a different element, there is not a double jeopardy problem); United States v. Dixon, 509 U.S. 688, 696 (1993) (holding that the same-elements test inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution). The Blockburger test focuses on the statutory elements of the offense, rather than the evidence presented at trial. United States v. Sandstrom, 594 F.3d 634, 654 (8th Cir.), cert. denied, 131 S. Ct. 192 and 131 S. Ct. 202 (2010).

Here, count one (the § 35(b) charge) required proof that the hoax threat be targeted at an aircraft. 18 U.S.C. § 32(a)(2). This factual element was absent from count two (the § 844(e) charge), which required proof only that the threat be targeted at any person or real property. 18 U.S.C. § 844(e) (requiring that the false information concern an attempt to "kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive"). Likewise, count two included a factual element that was absent from count one–proof that the threat be made or conveyed "through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce." 18 U.S.C. § 844(e). A conviction under count one is not so specific, as the false information must only be generally "impart[ed] or convey[ed]." 18 U.S.C. § 35(b). Too, § 844(e) requires that the threat involve the use of "fire or an explosive," 18 U.S.C. § 844(e), while count one required proof that the threat involved a "destructive device or substance," which is defined more broadly to include "any explosive substance, flammable material, infernal machine, or other chemical, mechanical, or radioactive device or matter of a combustible, contaminative, corrosive, or explosive nature." 18 U.S.C. § 31.

While related, and even though these charges stem from the same conduct, they each uniquely contain an element not required by the other, or an element that

demands the showing of a "heightened requirement." See Gamboa, 439 F.3d at 810. Accordingly, there is no double jeopardy violation here.

### D. Sufficiency of the Evidence

This court reviews the sufficiency of the trial evidence de novo, in the light most favorable to the government. United States v. Van, 543 F.3d 963, 964 (8th Cir. 2008). The crux of Williams' argument is that, evaluated under the totality of the circumstances, no reasonable recipient would have believed this call to be a true threat. He claims that even the actual recipient in this case did not appear to be rattled during the call and merely followed protocol after hanging up. He also reiterates that given the definition of "maliciously" contained in the instructions, the mens rea requirement was not met, or was broadened; a claim we previously disposed of when discussing Williams' claims regarding the jury instructions. Finally, Williams claims there was insufficient evidence that he knew that the information he conveyed that day on the phone was not true.

Given our standard of review and based upon our review of the record, all of Williams' sufficiency claims fail. A "true threat" is "a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm." Mabie, 663 F.3d at 332 (internal quotation omitted). The record supports the conclusion that indeed the officer at Lambert Airport took Williams' call seriously. Yet, even indulging Williams' claim that the officer who first received Williams' call, and others, did not legitimately consider Williams' statements a threat, it is of no consequence. The test is an objective one, not subjective, and officers at airports do not have the luxury of discounting threats such as those made by Williams. The very protocol instituted in this case is the harm sought to be avoided and criminalized by these statutes. And, there was sufficient evidence to support the conclusion that Williams knew the information conveyed was false. The jury could infer that Williams had knowledge of his own plan for future action, or inaction, especially if those plans

included the bombing of a commercial aircraft. Williams gave the name of "Dorian" as the supposed explosives-carrying passenger, which turned out to be false, and suspiciously attempted to conceal his identity when law enforcement closed in on his use of the telephone just prior to his arrest. There is ample evidence in this record to support both charges.

### E.    Career Offender Enhancement

Finally, Williams contends that the court erred in sentencing him as a career offender, arguing that his instant conviction for violation of § 844(e) is not a crime of violence because "the jury could have found the false information concerned injury to the property of an airport or airplane vehicle and not to persons." He does not, however, dispute that he had two prior qualifying felony convictions for crimes of violence, nor is there a dispute that Williams was at least eighteen years old when he committed the instant offense. The court of appeals reviews de novo a district court's determination that a conviction constitutes a crime of violence under the career offender sentencing guideline. United States v. Craig, 630 F.3d 717, 723 (8th Cir. 2011).

In Williams' presentence investigation report (PSR), the probation office recommended a base offense level of twenty four, based upon its deduction that Williams should be sentenced as a career offender. U.S.S.G. § 4B1.1(a). Sentencing as a career offender requires (1) that the defendant be at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) that the instant offense is a felony that is either a crime of violence or a controlled substance offense, and (3) that the defendant have at least two prior felony convictions of either a crime of violence or a controlled substance offense. Id. The PSR noted that Williams was at least eighteen years old at the time of the instant offense and that count two is a felony crime of violence. The United States Sentencing Guidelines (U.S.S.G.) § 4B1.2(a) defines a "crime of violence" as:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The definition of "crime of violence" contemplated by § 4B1.2(a) is nearly identical to that of "violent felony," as contemplated by 18 U.S.C. § 924(e)(2)(B) (which, generally, enhances criminal sentences in particular circumstances when the person has three previous convictions for a violent felony), and which similarly uses the term "physical force," and we treat the two as interchangeable. Craig, 630 F.3d at 723. "Physical force" under the career offender guideline § 4B1.2(a)(1), then, refers to "*violent* force–that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 130 S. Ct. 1265, 1271 (2010). The "residual clause," contained in § 4B1.2(a)(2), establishes a crime of violence when the conviction in consideration (1) presents a serious potential risk of physical injury to another, and (2) is roughly similar in kind as well as degree of risk posed, to the offenses listed in § 4B1.2(a)(2). United States v. Watson, 650 F.3d 1084, 1092 (8th Cir. 2011).

Williams astutely contends that the jury instructions on the § 844(e) charge allowed the jury to find that he had threatened "to kill and injure individuals, *or* to unlawfully damage or destroy a vehicle or property." He claims the use of "or," rather than "and," implies that the jury might have convicted him on the theory that he threatened only property, and not human life and limb, which Williams claims prohibits a finding that this charge qualified as a crime of violence. The disjunctive nature of this jury instruction is problematic. The determinative issue for resolution of this matter involves determining what this court can review to decide whether the instant conviction constituted a crime of violence or not for purposes of applying the career offender enhancement. Citing Johnson, id. at 1273, Williams argues that the

Supreme Court has limited the source material for the crime of violence analysis in jury-tried cases to "jury instructions and verdict forms."

If we only look at the jury instructions here, then Williams likely would have a meritorious argument. It is arguable that, because of the "or," Williams could have been convicted under § 844(e) for a bomb and arson threat against persons; or a bomb and arson threat against property, only one of which is a crime of violence. However, we reject Williams' argument that the district court erred in sentencing him as a career offender. Williams fails to fully note the breadth of information available to resolve this issue under the modified categorical approach. Quoted in full, Johnson held "the modified categorical approach that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record–including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." Id. (internal quotations omitted).

In that vein, the indictment alleged the § 844(e) violation in the *conjunctive*, which would likely land the charge in the "crime of violence" camp, while the *disjunctive* jury instruction would not. The indictment reads:

> On or about January 15, 2010, in St. Louis County, in the Eastern District of Missouri, the Defendant herein, through the use of a telephone in or affecting interstate commerce, did willfully make a threat, and did maliciously convey false information knowing the same to be false, concerning an alleged attempt to be made to kill and injure individuals and unlawfully to damage and destroy a vehicle and personal property by means of an explosive.

Here, then, reviewing the charging document does not necessarily resolve the matter. Despite the conjunctive nature of the indictment, there remains uncertainty regarding the basis of the jury's verdict here given the disjunctive nature of the instruction.

-16-

The government argues that in this instance we can review the evidence at trial to determine whether Williams' conviction under § 844(e) constitutes a crime of violence.[3] In the normal course we apply the "modified categorical approach" when determining whether a prior state court conviction, for example, qualifies as a crime of violence for purposes of sentencing. Shepard v. United States, 544 U.S. 13, 20 (2005) (noting that the categorical approach to previous convictions was adopted because "the practical difficulties and potential unfairness of a factual approach are daunting" (quotation omitted)). It is rare that a dispute concerning the career offender enhancement revolves around the instant offense of conviction. This paradigm affects our analysis.

Here, we will consider the readily available trial evidence to assess whether Williams' conviction under 18 U.S.C. § 844(e) qualified as a crime of violence. See United States v. Riggans, 254 F.3d 1200, 1203-04 (10th Cir. 2001) (observing that "the practical difficulties of conducting an 'ad hoc mini-trial[]' of *past* convictions . . . do not apply when the court is examining the conduct of the defendant in the instant offense" (first alteration in original)); United States v. Piccolo, 441 F.3d 1084, 1087 (9th Cir. 2006) (looking to the record evidence underlying the instant conviction, following its determination that the offense did not categorically qualify as a crime of violence, to determine whether the instant offense qualified). "[A] conduct-specific inquiry is permissible when considering whether the instant offense is a crime of violence." Riggans, 254 F.3d at 1204 (quotation and internal quotations omitted). Given the record evidence, namely threatening that a passenger would possibly be carrying explosives onto a commercial airline flight, the jury convicted Williams under the "kill and injure individuals," (and likely *also* the "unlawfully damage or

---

[3]The government alternatively argues that even if Williams' conviction under § 844(e) fails to establish a crime of violence for this enhancement, the record fully supports the use of the § 35(b) conviction to support the enhancement and that this panel is free to do so on this record. Although we decide the appeal on the merits of the § 844(e) argument raised, this alternative path, too, is tenable.

destroy a vehicle or property") part of the § 844(e) instruction. This conviction necessarily involves conduct capable of causing physical pain or injury to another person, and presents a serious potential risk of physical injury to another similar to other crimes enumerated in the Guidelines defining crimes of violence. Cf. United States v. Left Hand Bull, 901 F.2d 647, 649 (8th Cir. 1990) (where defendant mailed threatening letter, he committed crime of violence under career offender provisions, even if he lacked ability to act contemporaneously upon his threat); United States v. Flannery, 103 F. App'x 919, 920 (8th Cir. 2004) (unpublished) (determining out of hand that a conviction for aiding and abetting others in threatening to blow up a courthouse constituted a crime of violence). The record evidence resolves the question. The district court did not err in sentencing Williams as a career offender.

## III. CONCLUSION

For the reasons stated herein, we affirm.

_____