United States Court of Appeals

For the Eighth Circuit

_____

No. 14-3615
_____

United States of America

*Plaintiff - Appellee*

v.

Antonio Lamont Rice

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: December 14, 2015
Filed: February 11, 2016
_____

Before MURPHY, BENTON, and KELLY, Circuit Judges.
_____

MURPHY, Circuit Judge.

Antonio Rice pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Rice to 110 months in prison based in part on its conclusion that his prior conviction for second degree battery was

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

a crime of violence under the sentencing guidelines. Rice appeals his sentence, and we affirm.

Rice was arrested in 2013 and later pled guilty to being a felon in possession of a firearm. At sentencing the district court calculated a base offense level of 22 under § 2K2.1 of the guidelines after concluding that Rice had a prior felony conviction for a crime of violence, specifically a 2006 felony conviction of second degree battery in Arkansas. After adjusting Rice's offense level, the court calculated an advisory guideline range of 92 to 115 months and sentenced him to 110 months. Rice appeals, arguing that the district court erred while calculating his base offense level because his prior battery conviction was not a crime of violence.

We review de novo a district court's interpretation and application of the guidelines. See United States v. Vinton, 631 F.3d 476, 484 (8th Cir. 2011). Section 2K2.1 of the guidelines provides that courts should apply a base offense level of 22 for a conviction of unlawful possession of a firearm if, among other things, the defendant had previously "sustain[ed] one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(3). The guidelines define "crime of violence" as any federal or state offense punishable by more than one year imprisonment that either "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. § 4B1.2. The question thus is whether Rice's felony battery conviction was for a crime of violence under the guidelines, as the district court concluded.

To determine whether a prior conviction was for a crime of violence, "we apply a categorical approach, looking to the elements of the offense as defined in the . . . statute of conviction rather than to the facts underlying the defendant's prior conviction." United States v. Dawn, 685 F.3d 790, 794 (8th Cir. 2012) (alteration in

original). If the statute of conviction is divisible in that it encompasses multiple crimes, some of which are crimes of violence and some of which are not, we apply a modified categorical approach to "look at the charging document, plea colloquy, and comparable judicial records" for determining which part of the statute the defendant violated. Id. at 794–95. We then determine whether a violation of that statutory subpart is a crime of violence. See id. at 795. Here, the Arkansas second degree battery statute is divisible, id., and the district court correctly applied the modified categorical approach to determine that Rice was convicted under subsection (a)(4) of that statute. The issue is therefore whether a violation of that subsection is a crime of violence. Since the violation "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2, we conclude that it was a crime of violence.

Subsection (a)(4) provides that a person is guilty of second degree battery if he "intentionally or knowingly, without legal justification, causes physical injury to one he knows to be" a law enforcement officer, a firefighter, a correctional facility employee, a school employee, an elderly person, a young child, a state officer or employee, a healthcare provider, or incompetent. Ark. Code Ann. § 5-13-202 (2006). The Supreme Court recently held in United States v. Castleman, 134 S. Ct. 1405 (2014), that a similarly worded statute included the use of physical force as an element under 18 U.S.C. § 921(a)(33)(A)(ii). In Castleman, the defendant had been convicted of "intentionally or knowingly caus[ing] bodily injury" to his child's mother in violation of Tennessee law. Castleman, 134 S. Ct. at 1414. The Court held that this conviction included the use of physical force as an element because "[i]t is impossible to cause bodily injury without applying force." Id. at 1415.

Here, as in Castleman, Rice had been convicted of "intentionally or knowingly . . . caus[ing] physical injury"[2] to another person. Ark. Code Ann. § 5-13-202 (2006).

---

[2]"Physical injury" under Arkansas law means "(A) Impairment of physical condition; (B) Infliction of substantial pain; or (C) Infliction of bruising, swelling, or

His offense of conviction therefore includes the use of physical force as an element. See Castleman, 134 S. Ct. at 1415. Castleman does not end our analysis, however, because the Court held there that the physical force requirement of § 921(a)(33)(A)(ii) could be "satisfied by even the slightest offensive touching." Id. at 1410. By contrast, physical force under the guidelines refers specifically to "violent force," meaning "force capable of causing physical pain or injury to another person." United States v. Williams, 690 F.3d 1056, 1067 (8th Cir. 2012) (emphasis omitted). On the record here, we conclude that Rice's conviction includes the use of violent force as an element "since it is impossible to cause bodily injury without using force 'capable of' producing that result." Castleman, 134 S. Ct. at 1416–17 (Scalia, J., concurring).

Rice argues that a person can cause an injury without using physical force, for example, by offering his victim a poisoned drink. The circuit courts that have considered whether a person uses physical force in causing an injury through indirect means such as poisoning have reached differing conclusions. See, e.g., Chrzanoski v. Ashcroft, 327 F.3d 188, 194–96 (2d Cir. 2003); United States v. Perez-Vargas, 414 F.3d 1282, 1285–87 (10th Cir. 2005); compare United States v. Anderson, 695 F.3d 390, 399–401 (6th Cir. 2012); De Leon Castellanos v. Holder, 652 F.3d 762, 764–67 (7th Cir. 2011). We believe that Castleman resolves the question before our court, however, because there the Court held that even though the act of poisoning a drink does not involve physical force, "the act of employing poison knowingly as a device to cause physical harm" does. Castleman, 134 S. Ct. at 1415. The Court explained, "[t]hat the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter," because otherwise "one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." Id.

---

visible marks associated with physical trauma." Ark. Code Ann. § 5-1-102 (2006). This is similar to the definition of "bodily injury" under Tennessee law which the Castleman Court concluded "necessitate[d] [the use of] force." See Castleman, 134 S. Ct. at 1414.

On the record here, we therefore conclude that Rice's battery conviction was for a crime of violence and that the district court correctly calculated his base offense level under § 2K2.1 of the guidelines. Accordingly, we affirm the judgment of the district court.

KELLY, Circuit Judge, dissenting.

Rice's base offense level was calculated pursuant to USSG § 2K2.1(a)(3)(B), based on the assumption that he had previously committed a crime of violence. An offense is a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a)(1). Relying on the definition of "physical force" in the context of the Armed Career Criminal Act, Johnson v. United States, 559 U.S. 133 (2010), we have said that "[p]hysical force" as used in § 4B1.2(a)(1) refers to "*violent* force." United States v. Williams, 690 F.3d 1056, 1067–68 (8th Cir. 2012).

By contrast, the Supreme Court's decision in Castleman involved the definition of "a misdemeanor crime of domestic violence" in 18 U.S.C. § 922(g)(9). United States v. Castleman 134 S. Ct. 1405, 1408 (2014). Like "crime of violence" in § 4B1.2(a)(1), the term "misdemeanor crime of domestic violence" is defined to include offenses that have, "as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A)(ii). But Castleman held that in the context of misdemeanor domestic violence, "physical force" must be defined more broadly, to encompass not just "violent force" but also the common-law meaning of "force" – a meaning that included "even the slightest offensive touching." Castleman, 134 S. Ct. at 1410–13 (quoting Johnson, 559 U.S. at 139). The Court explained that the word "'violence' standing alone 'connotes a substantial degree of force,'" but domestic violence is not just a type of "violence" but rather "a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." Id. at 1411 (quoting Johnson, 559 U.S. at 140). Castleman's conclusion that causing bodily injury required the application of physical force was based on this broader definition of "physical force,"

as the Court repeatedly emphasized.  See, e.g., id. at 1415 ("It is impossible to cause bodily injury without applying force *in the common-law sense*." (emphasis added)); id. at 1414 ("[T]he *common-law concept of 'force'* encompasses even its indirect application." (emphasis added)).

This case, on the other hand, involves the definition of "crime of violence" in USSG § 4B1.2(a)(1).  The question at the heart of the case, then, is whether intentionally or knowingly causing physical or bodily injury to another, as Arkansas Code Annotated § 5-13-202(a)(4) requires, necessarily involves the use, threatened use, or attempted use of *violent* force by the defendant.  This question could not have been implicitly resolved by Castleman, for the majority opinion there explicitly reserved it.  Castleman, 134 S. Ct. 1405, 1414 (2014) ("Justice SCALIA's concurrence suggests that [bodily injury] necessitate[s] violent force, under Johnson's definition of that phrase.  But whether or not that is so – *a question we do not decide* – these forms of injury do necessitate force in the common-law sense." (emphasis added) (citation omitted)).[3]

A number of courts and judges, including a clear plurality of the courts of appeals, have concluded that a person may cause physical or bodily injury without using violent force.  Whyte v. Lynch, 807 F.3d 463, 469–72 (1st Cir. 2015); United States v. Torres-Miguel, 701 F.3d 165, 168–69 (4th Cir. 2012); United States v. Villegas-Hernandez, 468 F.3d 874, 880–82 (5th Cir. 2006); United States v. Perez-Vargas, 414 F.3d 1282, 1286–87 (10th Cir. 2005); Chrzanoski v. Ashcroft, 327 F.3d 188, 196 (2d Cir. 2003); United States v. Fischer, 641 F.3d 1006, 1010–11 (8th Cir. 2011) (Colloton, J., concurring); United States v. Anderson, 695 F.3d 390, 404–05 (6th Cir. 2012) (White, J., concurring).  In my view, they are correct.  A person could, for example, direct a firefighter acting in the line of duty to drive towards a bridge at

---

[3]See also id. at 1413 ("Whether or not the causation of bodily injury necessarily entails violent force – *a question we do not reach* – mere offensive touching does not." (emphasis added)).

-6-

night, knowing that it was out. Or he might cancel an incompetent individual's insulin prescription, knowing her to be severely diabetic. Or he could, on finding out that a 60-year-old was going skydiving, suggest that she use a parachute that he knew was defective. Each of these examples would qualify as a violation of § 5-13-202(a)(4), but none could reasonably be described as involving the use, attempted use, or threatened use of *violent* force, because none involves a "substantial degree of force." Castleman, 134 S. Ct. at 1411 (quoting Johnson, 559 U.S. at 140). "[T]he ordinary meaning of [a 'crime of violence'] . . . suggests a category of violent, active crimes" quite unlike the examples just given. Id. at 1410 n.3 (second alteration and ellipsis in original) (quoting Johnson, 559 U.S. at 140).[4]

Because I believe it is possible to violate § 5-13-202(a)(4) without using violent force, I conclude that Rice's conviction under that statute does not qualify as a crime of violence as that term is defined in § 4B1.2(a)(1). For that reason, I respectfully dissent.

_____

[4]United States v. Salido-Rosas, 662 F.3d 1254, 1256–57 (8th Cir. 2011), does not compel a contrary conclusion. Although analyzing the definition of the "use of force" clause found in application note 1(B)(iii) of section 2L1.2 of the United States Sentencing Guidelines, Salido-Rosas based its conclusions at least in part on the analysis of the residual clause of the Armed Career Criminal Act in James v. United States, 550 U.S. 192, 208 (2007) – an analysis that has since been rejected in Johnson v. United States, 135 S. Ct. 2551, 2563 (2015). See Salido-Rosas, 662 F.3d at 1257.