In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1532

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SAMUEL L. BRADBURY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:14-cr-00071-PPS-APR-1 — **Philip P. Simon**, *Judge*.

ARGUED JANUARY 18, 2017 — DECIDED FEBRUARY 16, 2017

Before WOOD, *Chief Judge*, and POSNER and HAMILTON,
*Circuit Judges*.

POSNER, *Circuit Judge*. On June 8, 2014, Jerad and Amanda
Miller, originally of Lafayette, Indiana, shot and killed two
police officers and one civilian in Las Vegas. The couple died
in an ensuing shootout with police, Amanda committing su-
icide after Jerad was shot. At approximately 11:15 p.m. on
June 19, 2014, Samuel L. Bradbury, a Lafayette resident,

placed the following message on his Facebook "wall," where it was readable by his Facebook "friends," who could moreover take screenshots of the message to convey to others:

I can't keep silent on this conspiracy anymore. I have to reveal some truth. My buddy and comrade Ant has been catching some flack for some of his posts about killing cops. I have to let out the truth. Jerad and Amanda Miller were losers. They were part of out [*sic*] group, the 765 Anarchists, the town's cop killing group run by none other than myself, Sam Bradbury. When we discovered that Jerad and Amanda were CIs and in with the boys in blue, we sent them out to the Bundy Ranch to cause controversy elsewhere because we didn't need them snitching on our business. I hadn't heard from him since that event, but some of our comrades gave the command and that's why Jerad and Amanda [M]iller killed those cops in Las Vegas. I thought Jerad was cool, but fuck him, he was a CI. Great job I must say, but not what we wanted. We, the 765 Anarchists, including myself and Ant are part of a much larger plot that we've been forming for years to kill cops in the local area, and specifically to take out WLPD Officer Troy Green and Tippecanoe County Sheriff, Tracy Brown. Jerad and Amanda were just following 765 Anarchist group orders, but they had fallen out of favor with the group after we discovered they were working with police as confidential informants. While we are glad that they killed some police, the 765 Anarchists are looking to make waves in the 765 area, specifically Lafayette. The top two on our hit list are Troy Green of the WLPD and Tracy Brown, Tippecanoe County Sheriff. We have field agents out currently gathering information and planning the attack. We have gathered enough thermite and explosives that we intend to not only kill those two pigs and any others that get in our way, but also to cause extreme damage to the county's var-

ious offices' equipment, including police cars and police buildings. Before the month is over, we intend to incinerate and destroy no less than 6 police cars, as well as the Tippecanoe County Courthouse, with hits specifically targeted on Judge Les Meade and Judge Loretta Rush also. The courthouse will be blown to pieces within the month, we have agents operating all over the city, and some all over the country. Ant is nothing more than a fall boy, although we do have plans to use him in a suicide strike on the police or a suicide bombing on a local police building before we are through. Our arsenal is massive, and our group has well over 50 supremely dedicated members who are willing to die. I can't let this story go on falsely anymore, Jerad and Amanda Miller didn't do shit, they were outcasts of the group, but they brought us the attention we needed. I, Sam Bradbury, am responsible for the organization of the group and the acquisition of the chemical weapons, incendiaries, explosives, munitions, and general arms. We will not stop this plan, we will cause chaos and terror. We will destroy the Tippecanoe County Courthouse in a blaze of glory and we will take out Tippecanoe County Sheriff Tracy Brown, no matter what the cost, even if we lose all of our members in the process, we will not go down without a fight and causing serious damage. So watch out, the cop killers are out. The 765 Anarchists are going to purge the vile pig scum from this land and restore constitutional rights to the people. Call us crazy, call us killers, call us heroes and patriots. We're okay with all of it. Remember – KILL COPS, STICK PIGS, AND WATCH OUT FOR THE 765 ANARCHISTS, INCLUDING SAM BRADBURY AND ANT! (FREE SPEECH EXERCISE FOOLS)[.]

In response to a comment from a friend asking whether his post was serious, Bradbury described it as "complete sat-

ire … . This is simply a big mind game and satirical joke. … [I]t's made to get you to think." (To think about committing mayhem!) About a half hour after posting the message he deleted it, but one of his friends had obtained screenshots of the post and discussed them with a coworker, who sent them to the police, which kicked off an investigation that resulted in Bradbury's arrest and (pursuant to search warrants) searches of his bedroom in his parents' home. The search turned up approximately four pounds of chemicals: 0.38 pounds of thermite (a compound of metal oxide and aluminum) plus 3.5 pounds of unmixed ingredients for making more thermite, and also turned up magnesium, which can be used to ignite thermite—and once it is ignited, thermite burns at an extremely high temperature and so can cause a great deal of damage.

On the basis of these discoveries, and the threats in the Facebook post, Bradbury was indicted on federal charges of threatening to use explosive materials to kill law enforcement officers and state court judges and destroy a courthouse and police vehicles, all by means of the thermite found in his bedroom—thermite ignitable by the magnesium also found there. But a superseding indictment changed the charges to "willfully mak[ing] any threat" and "maliciously convey[ing] false information." The jury trial that ensued resulted in Bradbury's acquittal of the first charge and conviction of the second. The judge sentenced him to 41 months of imprisonment to be followed by two years of supervised release.

The count of which he was convicted was based on 18 U.S.C. § 844(e), which provides, so far as relates to this case, that "whoever, through the use of the mail, telephone, tele-

graph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, … maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made or to be made to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, by means of fire or an explosive, shall be imprisoned for not more than 10 years or fined under this title, or both." The judge instructed the jury that to act "maliciously" means "to act intentionally or with deliberate disregard of the likelihood that damage or injury will result." He added that the jury should find the defendant guilty if it concluded that he'd intentionally "conveyed false information, knowing the same to be false," that "the false information was conveyed maliciously and via an instrument of interstate commerce," and that it "concerned an alleged attempt to kill or injure law enforcement officers or to damage or destroy the Tippecanoe County Courthouse or other public property by use of fire or explosives." And so the jury found.

Bradbury argues that the judge's definition of "maliciously" allowed the jury to convict him merely for posting the message (an intentional act) even if he didn't intend the post to cause harm—in other words if his Facebook post was a joke and so there was nothing malicious about it, just as in *United States v. Hassouneh*, 199 F.3d 175, 182 (4th Cir. 2000), which vacated a conviction under the Bomb Hoax Act, 18 U.S.C. § 35(b), in which a similar instruction had been given to the jury and the defendant had argued that the false statements about a bomb in his airline luggage were jokes.

The jurors in the present case, however, could not have believed that the instructions they were given equated "maliciously" to "intentionally," because that would make trimming one's fingernails a malicious act. To make a threat, however, is both intentional and malicious—intentional because deliberate and malicious because calculated to inspire fear and provoke a possibly costly response—even if the threatener doesn't intend to carry out the threat. And that is how the government argued the case to the jury—that Bradbury should be convicted because he had conducted an elaborate, detailed, and malicious hoax, intending the disruptive effects that resulted from his threat, even though it wasn't carried out, to blow up a courthouse and kill several named judges and law enforcement officers.

We find variant instructions in other, similar cases, such as *United States v. Grady*, 746 F.3d 846, 849 (7th Cir. 2014), which defined "maliciously" in 18 U.S.C. § 844(i) as acting "intentionally or with deliberate disregard of the likelihood that damage or injury would result, and *United States v. Williams*, 690 F.3d 1056, 1064–65 (8th Cir. 2012), where an instruction under section 844(e) read that "To act maliciously as the term is used in these instructions means to act intentionally or with willful disregard of the likelihood that damage or injury will result." An alternative wording of the instruction given in a case such as the present one might be that a defendant acts "maliciously" within the meaning of section 844(e) "if he acts either with the intention to cause damage or injury or with deliberate disregard for the likelihood that damage or injury would result."

But the instructions in the present case were adequate, and, as the judge explained, "when someone goes on social

media and says he is going to blow up a courthouse, or any building for that matter, that is almost assuredly going to cause substantial harm by diverting law enforcement resources." Sure enough, Bradbury's Facebook post precipitated an extensive police investigation that discovered Bradbury's thermite and magnesium hoard—hardly the material of harmless jokes. Furthermore, the persons named in the post as intended murder victims of Bradbury and his pals can't have enjoyed seeing the screenshots of the post.

It's true that the word "maliciously" is not precise; if you google "maliciously synonyms," Thesaurus.com gives you 16 words, ranging in gravity from "crookedly" to "roguishly." See www.thesaurus.com/browse/maliciously (visited Feb. 16, 2017). But at least "malice" and "malicious" are reasonably clear and they in turn guide interpretation of "maliciously." "Malice" is the noun, "malicious" the adjective, and "maliciously" the adverb—and so to act maliciously is to act with malice, or equivalently to be malicious. All three cognates well describe Bradbury's post, which he knew might be read by people not all of them his pals and communicated by them to the police and to the persons named in the post as intended victims of him and his cronies. Most hoaxes are harmless, but a hoax based on a threat of harm is criminalized by 18 U.S.C. § 844(e), as explained by the district judge, even if the harm that ensues is fright rather than physical injury.

AFFIRMED