# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4039

_____

United States of America

*Plaintiff - Appellee*

v.

Ricky Ernest Peeples

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: October 16, 2017
Filed: January 2, 2018

_____

Before WOLLMAN, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Defendant Ricky Peeples appeals the district court's[1] imposition of a 105-month sentence following his guilty plea to one count of Possession of Ammunition by a Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Peeples argues that the district court erred when it: (1) found that his prior conviction for attempted murder was a crime of violence; (2) applied a four-level upward departure from his adjusted base offense level; and (3) imposed a substantively unreasonable sentence. We affirm.

## I. Background

At 1:00 a.m. on January 2, 2016, officers responded to a report that Peeples was shooting a gun around his residence. When officers arrived, they talked to Anita Kowalsky and Neil Heminover, Peeples's downstairs neighbors. They told the officers that they had argued with Peeples earlier in the evening. They then showed the officers bullet holes in Heminover's bedroom wall and indicated that the shots had come from Peeples's upstairs residence.

The officers noticed Peeples looking out the window of his apartment. When they went to speak with him, they noted that he was visibly intoxicated and was not complying with their instructions. Officers entered Peeples's apartment and saw, in plain view, a .22 caliber bullet next to Peeples's feet and two more .22 caliber bullets on his bed. Eventually, the officers discovered a .22 caliber revolver, three boxes of .22 caliber amunition, several spent .22 caliber shell casings in the kitchen trash can, and 8 spent shell casings in the cylinder of the revolver.

Peeples pled guilty to one count of Possession of Ammunition by a Felon. He also did not deny that his actions on the night of his arrest constituted commission of the Class "D" felony of Intimidation with a Dangerous Weapon under Iowa Code

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

§ 708.6. In calculating Peeples's base offense level, the district court adopted the Pre-sentence Report's ("**PSR**") recommendation that Peeples's previous conviction in Iowa for attempted murder constituted a crime of violence, thus giving him a base offense level of 20 under § 2K2.1(a)(4) of the United States Sentencing Guidelines (the "**Guidelines**"). The court then adjusted the offense level up four levels under § 2K2.1(b)(6) because Peeples used or possessed a firearm or ammunition in connection with another felony offense, here Intimidation with a Dangerous Weapon under Iowa Code § 708.6, raising his offense level to 24. The court subsequently deducted three levels because Peeples accepted responsibility for the offense, making his total offense level 21.

However, the court found that the four-level adjustment under § 2K2.1(b)(6) did not sufficiently account for the dangerousness of Peeples's actions. To adequately account for this consideration, the district court applied an additional four-level upward departure under § 5K2.6, which allows for a substantial sentence increase for the use of a weapon or dangerous instrumentality in the commission of an offense. Thus, the court determined that Peeples's offense level was 25, resulting in an advisory guideline range of 84 to 105 months. The court found that 105 months was the appropriate sentence. The court additionally stated that based on the factors set forth in 18 U.S.C. § 3553(a), it would have found that 105 months was an appropriate sentence regardless of the base offense level calculation.

## II. Crime of Violence

Peeples first challenges the district court's finding that attempted murder under Iowa Code § 707.11 (1991) is a crime of violence under § 2K2.1(a)(4)(A), making his base offense level a 20. We review de novo the district court's interpretation and application of the Guidelines and its determination of whether an offense is a crime of violence. United States v. Rice, 813 F.3d 704, 705 (8th Cir. 2016).

Under § 2K2.1(a)(4), the base offense level is 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." A "crime of violence" under § 2K2.1(a)(4) "has the meaning given that term in § 4B1.2(a)." USSG § 2K2.1, comment. (n.1). A "crime of violence" is defined in part as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a). Physical force under the Guidelines is "'violent force,' meaning 'force capable of causing physical pain or injury to another person.'" Rice, 813 F.3d at 705 (quoting United States v. Williams, 690 F.3d 1056, 1067 (8th Cir.2012)).

When determining whether a prior conviction was for a crime of violence, we must first consider whether the statute violated is divisible or indivisible. Id. If the statute is "divisible in that it encompasses multiple crimes, some of which are crimes of violence and some of which are not, we apply a modified categorical approach." Id. We examine "the charging document, plea colloquy, and comparable judicial records" to determine "which part of the statute the defendant violated," and then we "determine whether a violation of that statutory subpart is a crime of violence." Id. (internal quotation marks omitted). If the statute is indivisible, "set[ting] out a single . . . set of elements to define a single crime," Mathis v. United States, 136 S. Ct. 2243, 2248 (2016), "we apply a categorical approach, looking to the elements of the offense as defined in the . . . statute of conviction rather than to the facts underlying the defendant's prior conviction," Rice, 813 F.3d at 705 (alteration in the original) (quoting United States v. Dawn, 685 F.3d 790, 794 (8th Cir. 2012)).

In 1991, Peeples was convicted under Iowa Code § 707.11 (1991), which states:

[a] person commits a class 'B' felony when, with the intent to cause the death of another person and not under circumstances which would justify

-4-

the person's actions, the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person.

This statute only encompasses one set of elements for the single offense of attempted murder; thus, it is indivisible, and we apply the categorical approach. See Rice, 813 F.3d at 705.

In examining this statute, we have no trouble finding that the district court correctly determined that attempted murder under the Iowa statute constitutes a crime of violence for the purposes of § 2K2.1(a)(4). Peeples argues that the statute categorically fails to qualify as a crime of violence because it contains the phrase "any act," which is too broad. Using an example of a care-giver failing to provide sustenance to a dependent, he claims that someone could be convicted under the statute without using, attempting to use, or threatening to use physical force against another person. He argues that the care-giver, under that scenario, has committed a crime of omission, which does not require force, and if the care-giver had the requisite intent, he could be convicted under the Iowa statute. Therefore, Peeples contends, attempted murder cannot be a crime of violence because force is not an element of the offense.

In United States v. Rice, we addressed a similar argument. The defendant argued that under an Arkansas battery statute a person could "cause an injury without using physical force, for example, by offering his victim a poisoned drink." 813 F.3d at 706. We noted that the Supreme Court in United States v. Castleman considered this argument with regard to an assault statute. Id. There the Supreme Court held:

> [t]he "use of force" in [the defendant's] example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.

United States v. Castleman, 134 S. Ct. 1405, 1415 (2014) (third alteration in the original). The Supreme Court further found that it was "impossible to cause bodily injury without applying force in the common-law sense." Id. Accordingly, we held in Rice that the defendant's battery conviction was a crime of violence and that indirect harm from poisoning a drink still required the use of force. 813 F.3d at 706.

In line with these decisions, we hold that Iowa Code § 707.11 (1991) has as an element the use or attempted use of force. The phrase "any act by which the person expects to set in motion a force or chain of events" would include omissions as Peeples argues. However, the statute still requires the use of force, satisfying the violent force requirement under the Guidelines. In Peeples's example of a care-giver refusing to feed a dependent, it is the act of withholding food with the intent to cause the dependent to starve to death that constitutes the use of force. See Castleman, 134 S. Ct. at 1415. It does not matter that the harm occurs indirectly as a result of malnutrition. See id. Because it is impossible to cause bodily injury without force, it would also be impossible to cause death without force. Thus, an attempt to cause death would also require the use or attempted use of force.

### III. Upward Departure from Base Offense Level

Next, we consider whether the district court erred by applying a four-level upward departure from Peeples's total offense level under § 5K2.6, raising his offense level from 21 to 25. We review the district court's "decision to depart upward on the basis of a permissible factor . . . for abuse of discretion." United States v. Donelson, 450 F.3d 768, 774 (8th Cir. 2006). We review the district court's factual findings supporting departure for clear error. United States v. Tjaden, 473 F.3d 877, 879 (8th Cir. 2007).

Peeples first argues that the district court's conclusion that he targeted his neighbor's bedroom was clearly erroneous because the record lacks sufficient

-6-

evidence to prove that Peeples knew the shots he fired would enter Heminover's bedroom or even that he knew where the bedroom was. Clear error occurs when the district court's finding is "(1) not supported by substantial evidence; (2) based upon an erroneous view of the law; or (3) such that 'we are left with the definite and firm conviction that an error has been made.'" Phelps-Roper v. Ricketts, 867 F.3d 883, 890 (8th Cir. 2017) (quoting Sawheny v. Pioneer Hi-Bred Int'l, Inc., 93 F.3d 1401, 1407-08 (8th Cir. 1996)).

The district court cited to uncontested facts in the PSR that, after arguing with his downstairs neighbors, Peeples fired a gun from his upstairs apartment into his downstairs neighbor's bedroom. The court noted that it was 1:00 a.m. when Peeples fired the shots. The district court is correct that most people are in their bedrooms at 1:00 a.m., and Peeples would have known that his neighbors were home because he had argued with them earlier in the evening. Furthermore, the PSR indicates that there were several bullet holes in Heminover's bedroom wall, and it is not difficult to believe that Peeples knew he was firing into the bedroom since he lives in the apartment directly above Heminover and Kowalsky and had interacted with them. Based on this information, the district court concluded that Peeples targeted his neighbor's bedroom. Because the district court's factual conclusions are supported by substantial evidence and we are not left with a definite and firm conviction that an error has been made, we find that the district court did not clearly err in concluding that Peeples targeted Heminover's bedroom.

Peeples then argues that the district court engaged in double counting by departing upward four levels under § 5K2.6 because he had already received a four-level adjustment under § 2K2.1(b)(6)(B) that fully accounted for his felony conduct of discharging the gun in his apartment. "Double counting occurs if 'one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part.'"

Donelson, 450 F.3d at 774 (quoting United States v. Hipenbecker, 115 F.3d 581, 583 (8th Cir. 1997)).

In United States v. Donelson, the defendant was convicted of being a felon in possession of a firearm. Id. The district court found that the defendant used a firearm in connection with the Iowa offense of Intimidation with a Deadly Weapon. Id. The court applied a four-level enhancement under § 2K2.1(b)(5) for use of a firearm in connection with a felony offense and departed upward an additional two levels under § 5K2.6 "because the offense involved a reasonably foreseeable and substantial risk of death or bodily injury to multiple victims." Id. at 772. The defendant appealed, claiming that the district court had engaged in impermissible double counting by departing upward the additional two levels. Id. at 774. We affirmed the district court, holding that the kinds of harm underlying the departures were not identical because one harm was the use of the firearm and the other harm was the substantial risk to multiple victims of death or bodily injury. Id.

In United States v. Porter, the defendant also received a four-level enhancement under § 2K2.1 for use of a firearm in connection with a felony offense, as well as a seven-level enhancement under § 5K2.6 for firing a high-powered weapon into the victim's home. 409 F.3d 910, 914 (8th Cir. 2005). The defendant appealed, arguing that the district court erred by departing upward seven levels under § 5K2.6 for firing a weapon into the victim's home because that was fully accounted for in the four-level enhancement. Id. at 917. We affirmed the district court's sentence, holding that the additional seven-level enhancement was appropriate because the defendant's conduct was incredibly dangerous and could have killed the victim. Id. at 918.

Here, the district court found that the four-level adjustment under § 2K2.1(b)(6) applied, and additionally departed upward four levels under § 5K2.6 because Peeples's actions of firing a gun into his neighbors' apartment and targeting the bedroom were "unbelievably dangerous" and the additional four-level enhancement was necessary

to account for the extent to which Peeples endangered his neighbors. Following Donelson and Porter, we find that the district court did not engage in double counting. The harm accounted for under the § 2K2.1(b)(6) adjustment, to which Peeples did not object, is the use of a firearm in connection to the felony offense of Intimidation with a Dangerous Weapon under Iowa Code § 708.6. The harm accounted for under the § 5K2.6 upward departure is the incredible threat of serious injury or death to Heminover and Kowalsky. Because the enhancements account for two distinct harms, we hold that the district court did not err in applying an additional four-level enhancement under § 5K2.6.

## IV. Substantive Reasonableness of the Sentence

Our final consideration is whether the district court's sentence of 105 months is substantively unreasonable. When reviewing a defendant's sentence for substantive unreasonableness, we apply a highly deferential abuse of discretion standard. United States v. Ford, 705 F.3d 387, 389 (8th Cir. 2013). The district court has broad discretion in weighing the 18 U.S.C. § 3553(a) factors when imposing a sentence. Id.

The district court unequivocally stated that it considered the § 3553(a) factors when sentencing Peeples. Specifically, the court held that all of the factors combined, particularly Peeples's criminal history and the nature of the offense, caused the court to impose the 105 month sentence. See § 3553(a). Additionally, throughout the sentencing hearing, the district court made references to the seriousness of the offense and the need to fully account for the dangerousness of Peeples's actions. The weight that the court gave Peeples's criminal history and the nature of the offense when determining Peeples's sentence was well within the district court's discretion; therefore, we find that the district court did not abuse its discretion and Peeples's sentence is not substantively unreasonable. See Ford, 705 F.3d at 389.

## V. Conclusion

For the foregoing reasons, we affirm.

_____