# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3534

_____

United States of America,      *
     *
         Appellee,      *
     *    Appeal from the United States
       v.      *    District Court for the
     *    Eastern District of Arkansas.
Carl Wiley,      *
     *
         Appellant.      *

_____

Submitted: September 27, 2007
Filed: December 6, 2007 (Amended: 12/06/07)

_____

Before COLLOTON, ARNOLD, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Carl Wiley pled guilty to conspiracy to commit commercial check fraud, in violation of 18 U.S.C. §§ 371 and 513(a). The district court sentenced him to a term of 60 months' imprisonment, which represented an upward variance from the advisory guideline range of 27 to 33 months. Wiley appeals, arguing that the sentence is unreasonable with regard to 18 U.S.C. § 3553(a). We vacate the sentence and remand for resentencing.

# I.

Wiley was involved in a fraudulent check-cashing scheme with three co-conspirators. To perpetrate the crime, the conspirators purchased identification cards, social security numbers, and payroll checks from homeless persons or others in need of financial assistance. Using these identities, the conspirators opened new bank accounts. The conspirators then manufactured fraudulent commercial checks, payable to the account holders, using authentic bank routing and account information from paychecks or pay stubs. They deposited the fraudulent checks into the newly-opened accounts, then withdrew cash from those accounts before the bank could determine that the incoming checks were fraudulent. Once the cash was obtained, the conspirators abandoned the bank accounts and started anew with another name and another new account.

Wiley had been convicted of conspiracy to defraud the United States in 1998 for his role in a counterfeit check-cashing ring. While serving a sentence for that offense, Wiley wrote letters to one of his co-conspirators in the instant case, coaching him on how to commit bank fraud. In return, Wiley received money while he was in prison, and after Wiley escaped from custody in spring 2004, the conspirators paid Wiley additional funds for his assistance with the scheme.

At sentencing in this case, the court heard argument from Wiley's counsel, who urged a sentence at the low end of the advisory guideline range, i.e., 27 months' imprisonment. The court then afforded Wiley his right of allocution. Next, after hearing briefly from a probation officer about his presentence investigation, the court announced, with apparent reference to 18 U.S.C. § 3553(a), that trial judges "must take these factors into consideration." The court expressed concern that Wiley was "a man who was serving time" who "sent information directing others in the free world," even though "he was sent to prison to become rehabilitated." Noting that Wiley "didn't take advantage of it but used it in order to set up criminal activities in

the free world," the court asked counsel for their responses. The government responded by expressing agreement with the court's concerns, but stating that it would "defer to the sentencing guidelines" in selecting an appropriate sentence. Wiley's counsel acknowledged that the offense conduct was disturbing, but said Wiley had "changed" and now realized that he "needs to turn a new leaf on his life and be a productive citizen."

The district court then determined an advisory guideline sentence of 27 to 33 months' imprisonment, based on a total offense level of 12 and a criminal history category V. The offense level calculation included a finding that the financial loss from the offense was more than $10,000 but less than $30,000. PSR ¶ 22; USSG § 2B1.1(b)(1)(C). This finding apparently was based on a stipulation of the parties in Wiley's plea agreement that the loss was within that range. (Plea Agreement, ¶ 5.B; PSR ¶ 17).

After recounting the advisory sentencing range, the court said it was not persuaded that the guideline sentence would provide just punishment for the offense or afford adequate deterrence to criminal conduct. The court observed that Wiley had "been involved in a lot of criminal activity" and was "back before this court again." The court then announced its judgment that Wiley be sentenced to a term of 60 months' imprisonment, ordered restitution in an amount of $34,291.20, and advised Wiley of his right to appeal. The court granted the government's request that the restitution order be made joint and several with Wiley's co-conspirators, and the hearing was adjourned.

## II.

Wiley argues that the district court's decision to vary upward to a term of 60 months' imprisonment from the advisory range of 27-33 months made the sentence unreasonable with regard to 18 U.S.C. § 3553(a). *See United States v. Booker*, 543

U.S. 220, 261 (2005). The government responds that Wiley forfeited this claim of error in the district court, and that we should review the district court's decision only for plain error under Federal Rule of Criminal Procedure 52(b). The government further contends that the sentence is not unreasonable.

In considering whether Wiley has forfeited a claim of unreasonableness, such that plain error review should apply, we observe that a district court is not required to provide advance notice to a defendant that it may vary from the advisory guideline sentence. *United States v. Levine*, 477 F.3d 596, 606 (8th Cir.), *cert. denied*, 127 S. Ct. 3023 (2007). Thus, there will be occasions, as in this case, where the defendant first learns of the district court's intention to vary upward from the advisory range to a particular term of imprisonment when the court pronounces the final sentence. The government apparently urges that the defendant must then raise an objection to the sentence just pronounced, and essentially ask for reconsideration, in order to preserve for appeal a contention that the length of the sentence is unreasonable with regard to § 3553(a).

The government has not identified a case decided by our court after *Booker* that imposes this after-the-fact objection requirement. We are persuaded by the views of several other circuits that such a requirement is not warranted, at least where a party asserts only that *the length* of the sentence is unreasonable with regard to § 3553(a):

> To insist that defendants object at sentencing to preserve appellate review for reasonableness would create a trap for unwary defendants and saddle busy district courts with the burden of sitting through an objection – probably formulaic – in every criminal case. Since the district court will already have heard argument and allocution from the parties and weighed the relevant § 3553(a) factors before pronouncing sentence, we fail to see how requiring the defendant to then protest the term handed down as unreasonable will further the sentencing process in any meaningful way. Certainly we do not mean to discourage district courts from entertaining argument about the reasonableness of a sentence after

-4-

its pronouncement, nor do we suggest that our longstanding insistence on proper objections as to other sentencing issues, e.g., the application of a guideline adjustment, should be relaxed. All we conclude here is that our review of a sentence for reasonableness is not affected by whether the defendant had the foresight to label his sentence "unreasonable" before the sentencing hearing adjourned.

*United States v. Castro-Juarez*, 425 F.3d 430, 433-34 (7th Cir. 2005); *accord United States v. Bras*, 483 F.3d 103, 113 (D.C. Cir. 2007); *United States v. Torres-Duenas*, 461 F.3d 1178, 1182-83 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 3054 (2007); *United States v. Saffore*, 216 F. App'x 531, 533 (6th Cir.), *cert. denied*, 127 S. Ct. 3077 (2007). We therefore turn to the question whether the length of Wiley's sentence is unreasonable.

The government contends that the 60-month sentence is reasonable because it reflects the financial loss attributable to the conspiracy. The United States Attorney urges that while he was "willing to stipulate to the loss amount specifically charged in the Indictment, the Court held Wiley accountable for the loss associated with the entire conspiracy." (Appellee Br. 11). The total loss amount now advanced by the government – $293,039.17 – would have resulted in an advisory guideline range of 57-71 months' imprisonment, which encompasses the ultimate sentence of 60 months.

The assertion that the court relied on financial loss of more than $293,000 is not supported by the record. Consistent with the presentence report, the district court determined a total offense level of 12 under the advisory guidelines. This conclusion was premised on a finding that the loss amount was between $10,000 and $30,000, as stipulated by the parties. (PSR ¶ 22). If the district court had found that the loss amount was $293,039.17, as the government now contends, then the specific offense characteristic for loss would have increased the offense level by 12 levels rather 4, *see* USSG § 2B1.1(b)(1)(G), and Wiley's total offense level would have been 20, rather than 12. Nor does the record support a conclusion that the district court varied upward

from the advisory range based on a financial loss greater than the amount to which the parties stipulated. The court never mentioned the loss amount as a reason for the variance. If the court *had* relied on a greater loss amount to justify the variance, then we likely would be confronted with an internally inconsistent rationale. The district court was free to reject the government's stipulation as artificially low, if the evidence warranted that conclusion (and if the government's advocacy did not breach the plea agreement). *See* USSG § 6B1.4(d). But it could not find a loss of less than $30,000 for purposes of the advisory guidelines, and then reasonably vary from the advisory range based on a loss finding of more than $290,000 for purposes of § 3553(a). *See United States v. Brown*, 453 F.3d 1024, 1026 (8th Cir. 2006). And as we read the record, the court did not do so.

We thus examine the district court's variance and its stated reasons under our post-*Booker* framework. A sentence outside the advisory guideline range is not presumptively unreasonable, but "[a]s the size of the variance grows, so too must the reasons that warrant it." *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006). The six-level variance adopted here is substantial, and the justification must be proportionally compelling. *See United States v. Myers*, Nos. 06-3252, 06-3581, 2007 WL 2873599, at *6 (8th Cir. Oct. 4, 2007). We have said that a district court, in applying § 3553(a), may consider factors already taken into account in calculating the advisory range, *United States v. White*, Nos. 06-3781, 06-3886, 2007 WL 3225542, at *8 (8th Cir. Nov. 2, 2007), but we also have cautioned that "*substantial* variances based upon factors already taken into account in a defendant's guidelines sentencing range seriously undermine sentencing uniformity." *United States v. Solis-Bermudez*, 501 F.3d 882, 885 (8th Cir. 2007) (emphasis added) (internal quotation omitted).

The district court's brief discussion in this case focused on the facts that Wiley had a serious criminal history and that during his most recent stint in prison, he had used the time to plan and assist in carrying out the instant offense. The district court's concern with providing just punishment and affording adequate deterrence are

legitimate considerations under § 3553(a), but it is also true that the advisory sentencing guidelines take into account the principal factors discussed by the district court. Wiley's prior criminal convictions for forgery in 1983, escape in 1994, and conspiracy to defraud in 1998 each resulted in three criminal history points under the advisory guidelines. His criminal history score was increased by three more points because he committed the instant conspiracy offense while under a criminal justice sentence and while incarcerated. USSG § 4A1.1(d), (e). The total criminal history score of 12 points placed him in criminal history category V. The court apparently believed that Wiley's incorrigibility nonetheless warranted additional prison time, and we do not think that conclusion is unreasonable. But as with many post-*Booker* sentencing appeals, the fighting issue here is not the permissibility of a variance, but the degree.

Given that the guidelines took into account Wiley's recidivism and his commission of this offense while incarcerated, we do not believe the recommended range so substantially under-represented the seriousness of Wiley's criminal history as to justify imposing a sentence almost twice as long as the top of the advisory guideline range. This case is distinguishable from others in which we have affirmed substantial upward variances based on aggravated criminal histories, such as where the defendants have amassed more than twice the number of criminal history points required to reach the highest category under the guidelines. *See United States v. Maurstad*, 454 F.3d 787, 789-90 (8th Cir. 2006); *United States v. Lyons*, 450 F.3d 834, 836-37 (8th Cir.), *cert. denied*, 127 S. Ct. 358 (2006); *United States v. Shannon*, 414 F.3d 921, 922-24 (8th Cir. 2005). It is more analogous to *United States v. Rouillard*, 474 F.3d 551 (8th Cir. 2007), where we held that an eight-level upward variance "based on conduct accounted for in the Guidelines" was an abuse of discretion, noting that such variances lead to unwarranted sentence disparities. *Id.* at 558. In balancing the need to avoid unwarranted disparities in sentencing with the district court's concern with just punishment and adequate deterrence, we conclude

that the sentence of 60 months' imprisonment is unreasonable on this record. Accordingly, the sentence is vacated, and the case is remanded for resentencing.

On remand, the district court may consider any evidence relevant to the factors set forth in 18 U.S.C. § 3553(a) that it could have considered at the first sentencing hearing. *See United States v. Kendall*, 475 F.3d 961, 964 (8th Cir. 2007). If the district court wishes to consider applying, on its own initiative, a loss amount greater than the amount to which the parties stipulated, then it should give Wiley notice and an opportunity to be heard on that question.

GRUENDER, Circuit Judge, concurring.

I fully concur in the Court's opinion and judgment. I write separately to emphasize that our holding regarding the appropriate standard of review applies to the narrow circumstances of this case. We hold that an after-the-fact objection is not required to preserve errors where a party only asserts that the *length* of the sentence is unreasonable. This holding should not be construed as applying to *all* challenges to the reasonableness of a sentence.

We have previously held that the reasonableness of a sentence is reviewed for abuse of discretion and that a district court abuses its discretion when it: (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers the appropriate factors but commits a clear error of judgment in weighing those factors. *United States v. Haack*, 403 F.3d 997, 1003-04 (8th Cir. 2005).

Wiley essentially argues that the district court erred in weighing the appropriate sentencing factors under § 3553(a). In this situation, I agree fully with the Court that requiring an after-the-fact objection at sentencing would serve no useful purpose. Hence, I read the Court's holding that Wiley's failure to object at sentencing does not

require plain error review to apply only where a party challenges the *length* of the sentence by asserting that the district court committed a clear error of judgment in weighing the appropriate factors.

However, this case does not address challenges that the district court abused its discretion in sentencing based on the first two grounds identified in *Haack*. Therefore, this opinion does not prevent a panel in a future case from holding that a party must object in order to avoid plain error review of challenges based on the district court's failure to consider relevant factors or based upon the district court's consideration of improper or irrelevant factors. While that ultimate determination will be left for another day, we have held that the purpose of an objection is to provide the district court an opportunity to correct any substantive errors before they are appealed. *See Niemiec v. Union Pac. R.R. Co.*, 449 F.3d 854, 857 (8th Cir. 2006). As such, requiring an objection to the district court's consideration of inappropriate factors or a sufficient argument identifying appropriate factors for the district court's consideration would serve a useful purpose by furthering the long-standing goal of allowing the district court the opportunity to correct any potential errors in the first instance.

With these observations, I join the Court's opinion and judgment.
_____