# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3377

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Brian Jeffries, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 18, 2010
Filed: August 5, 2010

_____

Before WOLLMAN, EBEL,[1] and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Brian Jeffries pleaded guilty to one count of abusive sexual contact with a child, in violation of 18 U.S.C. §§ 2244(a)(5), 2246(3), and 1153. In a previous appeal, we remanded Jeffries' case for resentencing because the evidence was insufficient to establish a prior conviction that provided the basis for an enhancement that the court had relied upon in imposing Jeffries' sentence. See United States v. Jeffries, 569 F.3d

_____

[1]The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

873 (8th Cir. 2009). On remand, the district court[2] sentenced Jeffries to 360 months' imprisonment. Jeffries appeals, arguing that his sentence is unreasonable. We affirm.

Both Jeffries and the government agree that Jeffries' advisory guideline range was properly recalculated on remand as 292 to 365 months. In sentencing Jeffries, the district court noted that, in addition to the conduct to which he had pled guilty, Jeffries had a prior state conviction for attempted rape and had attempted to sexually assault another young girl. The court stated that "[b]ecause of that pattern of sexual abuse towards young girls and young women, I find that a sentence near the top end of your advisory guideline range is what is appropriate here primarily for the purpose of protecting the public."

We review the reasonableness of a sentence in light of the factors in 18 U.S.C. § 3553(a) and will reverse only if the district court abused its discretion.[3] United States v. James, 564 F.3d 960, 964 (8th Cir. 2009). We may presume that a sentence within the properly calculated guideline range is reasonable. Id.

Jeffries argues that the district court violated the admonition in § 3553(a) to "impose a sentence sufficient, but not greater than necessary" when it cited the need

----

[2]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

[3]The government contends that our review should be circumscribed because Jeffries failed to raise at the sentencing hearing the argument he makes here. In United States v. Wiley, we held that a defendant need not object to the district court's pronouncement of a sentence in order to preserve the issue of whether the length of the sentence was unreasonable. 509 F.3d 474, 477 (8th Cir. 2007). Given that Jeffries challenges not just the length of his sentence generally but also the district court's failure to consider a specific argument as to its reasonableness, it is questionable whether the rule adopted in Wiley applies here. For purposes of this appeal, however, we will assume that Jeffries has not forfeited his Adam Walsh Act argument, and thus we will address it on the merits.

to protect the public as the basis for sentencing him at the top end of his guideline range. Jeffries acknowledges the specific instruction in § 3553(a)(2)(C) that district courts should consider the need for the sentence imposed to "protect the public from further crimes of the defendant." According to Jeffries, however, the court should not have given so much weight to the need to protect the public because the government has the ability to obtain a civil commitment order and indefinitely detain him after the expiration of his sentence if it establishes that he is sexually dangerous to others.

Under a recently enacted provision of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, the government may seek the civil commitment of a "sexually dangerous person." See 18 U.S.C. § 4248. A "sexually dangerous person" is someone who "has engaged or attempted to engage in sexually violent conduct or child molestation" and "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." Id. § 4247(a). In order to obtain a civil commitment, a hearing must be held and the government must produce clear and convincing evidence that an individual is a sexually dangerous person. Id. § 4248(d). The individual whose mental condition is at issue has the right to be represented by counsel and is given the opportunity to testify, present evidence, subpoena witnesses, and confront and cross-examine witnesses who appear at the hearing. Id. § 4247(d). Thereafter the committed individual remains entitled to periodic review of his status and release if his mental condition changes such that he is no longer dangerous to others. Id. §§ 4247(e); 4248(e). The Supreme Court recently held that Congress acted within its authority under Article I of the Constitution in providing for the civil commitment of sexually dangerous prisoners. See United States v. Comstock, 130 S. Ct. 1949 (2010); see also United States v. Tom, 565 F.3d 497 (8th Cir. 2009) (reaching the same conclusion). Jeffries argues that because this procedure would be available to prevent his release if he posed a threat to society, it was an abuse of the district court's discretion to consider public safety as a basis for imposing a lengthier sentence. We disagree.

Jeffries' argument is based on the incorrect assumption that the recently enacted civil commitment provisions shifted the responsibility for protecting the public from district courts at sentencing to the Department of Justice at the time a prisoner is released. Jeffries has cited nothing in the language of the statute or its legislative history that supports this conclusion. Rather, the new provisions are "a modest addition to a longstanding federal statutory framework, which has been in place since 1855" for the civil commitment of the mentally ill. Comstock, 130 S. Ct. at 1961.

The original federal civil commitment provisions were generally designed to close a loophole in the federal prison system—specifically, individuals who would have been subject to state civil commitment regimes if they had been state prisoners had nowhere to go upon the completion of their federal prison terms. "These federal prisoners, having been held for years in a federal prison, often had few ties to any State; it was a matter of speculation where they would choose to go upon release; and accordingly no State was enthusiastic about volunteering to shoulder the burden of civil commitment." Id. at 1970 (Alito, J., concurring). Federal civil commitment statutes were designed to address this problem, and the recently enacted provisions simply extended civil commitment to sexually dangerous prisoners, many of whom "were likely already subject to civil commitment" under preexisting statutes providing for "postsentence detention of federal prisoners who suffer from a mental illness and who are thereby dangerous (whether sexually or otherwise)." Id. at 1961. Thus, the possibility of civil commitment has long existed alongside a district judge's discretion to consider potential dangerousness in sentencing a defendant. There is no support for Jeffries' contention that the recently enacted provisions worked a significant change in the law.

Moreover, Jeffries' argument is unpersuasive for the additional reason that it makes an unwarranted assumption about the scope and application of the civil commitment provisions. Jeffries' argument implicitly assumes that any person whose release might pose a danger to the public would necessarily manifest the serious

mental illness, abnormality, or disorder required to trigger civil commitment. We decline to accept the assertion that the new provisions will prove to be such a completely effective screening mechanism. Given the procedural strictures and exacting standard of proof that the government must meet in order to secure civil commitment of a sexually dangerous prisoner, a district court's reliance on such a tenuous and uncertain eventuality would constitute an abdication of its statutory duty to impose a sentence that will protect the public from a defendant's further crimes.

In short, there is no reason to conclude that the provisions at issue were meant to displace a district court's initial discretion to consider potential danger to the public in choosing a defendant's sentence. This is particularly true given the long-standing role that such considerations have played in courts' sentencing decisions and the absence of any indication that Congress intended for the civil commitment of sexually dangerous prisoners to have any effect on sentencing. We believe that the civil commitment statutes are best viewed as a complement to the district court's sentencing discretion. Accordingly, we conclude that the district court did not abuse its discretion by considering the need to protect the public when it imposed Jeffries' sentence. The 360-month sentence that the district court imposed was within the properly calculated advisory guideline range and it was not substantively unreasonable.

The judgment is affirmed.

_____

-5-