# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1891
_____

United States of America

*Plaintiff - Appellee*

v.

Josh Harry Isler

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: September 25, 2020
Filed: December 18, 2020

_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In 2018, Josh Harry Isler pled guilty to one count of theft of trade secrets, in violation of 18 U.S.C. § 1832, and one count of making a false statement to the Federal Bureau of Investigation (FBI), in violation of 18 U.S.C. § 1001, related to his access and use of confidential company information belonging to his former

employer, DuPont, Inc. The district court[1] sentenced Isler to 42 months imprisonment, which represented an upward variance from his United States Sentencing Guidelines range of 0 to 6 months, followed by three years of supervised release and a $5,000 fine. Isler appeals his sentence, asserting that the district court committed procedural error and imposed a substantively unreasonable sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In February 2013, Isler was hired as a Technical Service Account Manager at DuPont Industrial Biosciences, a division of DuPont, Inc. that operated in the bio-fuels industry. The terms of Isler's employment included a confidentiality agreement whereby Isler agreed not to share trade secrets or proprietary company information with competitors. By July 2013, Isler began discussions with a smaller company about leaving DuPont for a potential employment opportunity. The smaller company was a direct competitor of DuPont's. On August 8, 2013, Isler accepted a formal offer of employment from the competitor, with a start date of August 26, 2013. On that same day, the competitor's Chief Operating Officer (COO) inquired via text message as to whether, while at DuPont, Isler had been servicing two specific ethanol plants that the competitor also worked with, telling Isler that he would be overseeing those two plants, as well as a third, when he began employment with the competitor. Isler and the COO exchanged numerous text messages, including one in which Isler stated, "Let me see what I can before I can't." The following day, August 9, 2013, Isler submitted his resignation to DuPont and advised them that his last day with the company would be August 23, 2013.

Computer records later revealed that, between August 11 and August 19, 2013, Isler transferred hundreds of internal electronic files belonging to DuPont to an external media device folder, with some of the files ultimately recovered on the

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

computer the competitor provided to Isler when he began employment. During this same time frame, Isler also exchanged email messages with another employee of the competitor, in which Isler offered to send the employee "visitor logs that may be of use to you," while noting that if the employee were "not comfortable viewing these, [Isler would] understand." After the employee responded that he was with the COO and that he was comfortable with Isler providing the information, Isler transmitted at least eight documents that contained trade secrets and proprietary information belonging to DuPont. This information included details regarding the ethanol plants Isler would be overseeing when he began his new employment and information regarding other DuPont customers. Isler and the COO then exchanged emails over a several-day period, discussing both the information about the plants and the customer information. When Isler notified the COO that he was going to turn his phone back over to DuPont, the COO reminded Isler to "erase all texts with me before giving the phone back."

On August 23, 2013, Isler's final day with DuPont, he participated in an exit interview, during which he was reminded of the confidentiality agreement he signed when beginning employment with DuPont. Isler acknowledged the confidentiality agreement, which included a requirement to protect DuPont's intellectual property even after the end of his employment, and affirmed that he understood its contents. On August 26, 2013, Isler began employment with the competitor and immediately assumed a role of providing information and advice regarding DuPont's proprietary information and customers, including participating in a meeting with one of the ethanol plants that was also a client of DuPont's.

On the morning of November 8, 2013, the FBI executed a search warrant at Isler's residence. When FBI agents executing the search warrant questioned Isler regarding any files or documents he had downloaded or copied that contained trade secrets or proprietary information belonging to DuPont, Isler initially denied downloading any files belonging to DuPont, asserting that he had downloaded only personal information and nothing belonging to DuPont. Upon continued questioning, Isler stated he had downloaded only "a handful" of files but was certain

he had not downloaded anything else. After being confronted with evidence showing that he had downloaded hundreds of DuPont's files, Isler stated that he had done so to assist him in his new position with the competitor. Before searching the rest of the residence, FBI agents asked Isler if he had any firearms on the property. Isler stated that he did not, but when agents later recovered a firearm from an outbuilding on the property, Isler admitted to knowing there was a firearm where agents had recovered it.

After the FBI searched Isler's residence, Isler sent two emails to the competitor's COO and another company employee. These emails provided a false explanation for the presence of DuPont files on Isler's computer, including that he had downloaded the files to help him while DuPont computers were down and that it was common practice, and even encouraged by DuPont, to download files onto personal computers. Isler also sent the same false explanation to his father via email. On November 14, 2013, the COO notified Isler that, at the direction of the competitor's company attorneys, Isler was being placed on temporary administrative leave based on the investigation. Isler was reinstated by the competitor in 2014 but was terminated in 2018 based on his involvement in this case.

On June 28, 2018, Isler was charged by information with one count of theft of trade secrets and one count of making false material statements to the FBI. He then entered a guilty plea to both counts pursuant to a plea agreement. As part of the plea agreement, the parties stipulated to a loss amount of at least $5,000, but both parties acknowledged that the final loss determination would be made by the district court. The United States Probation Office prepared a Presentence Investigation Report (PSR), which determined that the appropriate United States Sentencing Guidelines range was 0 to 6 months imprisonment. The PSR specifically stated that neither the Probation Office nor DuPont had been able to reasonably estimate an actual or intended loss as a result of Isler's theft of trade secrets and that a significant upward departure may be warranted based on DuPont's loss.

Sentencing proceeded in two parts. At the first sentencing hearing, the district court heard testimony regarding three proposed methods of calculating DuPont's loss. The government first presented evidence that the loss could be calculated by considering the lost sales revenue to DuPont, which it calculated as more than $18,000,000. It then presented evidence that the loss could be calculated by considering research and development costs in the amount of "thousands, if not millions, of dollars." The government finally argued the district court could calculate the loss by considering Isler's gain, which it calculated as over $550,000 when it totaled the total salary Isler earned over five years of employment with the competitor. The district court then recessed to consider the parties' arguments. At the second sentencing hearing, before imposing its sentence, the district court noted that the case was unusual in that Isler admitted his theft of trade secrets had a financial impact on DuPont; however, "calculating the loss to the victim for purposes of computing an advisory guideline range with any degree of accuracy is just not possible." R. Doc. 53, at 1. The district court thus rejected each of the government's proposed measures of loss. Because "the seriousness of the crime [was] not captured in the advisory guideline calculation," the district court varied upwards and imposed a sentence of 42 months on each count, with the sentences to run concurrently, and a three-year period of supervised release as well as a $5,000 fine. R. Doc. 53, at 1. Isler filed this appeal, arguing that the district court's sentence was both procedurally flawed and substantively unreasonable.

II.

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we 'apply a deferential abuse-of-discretion standard.'" United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (citation omitted). "We review a district court's sentence in two steps, first reviewing for significant procedural error, and second, if there is no significant procedural error, we review for substantive reasonableness." United States v. Ayres, 929 F.3d 581, 582-83 (8th Cir. 2019).

Isler asserts that the district court committed procedural error by: (1) failing to address his arguments against an above-Guidelines-range sentence; (2) failing to adequately explain the deviation from the Guidelines range; (3) misapplying the Guidelines to increase his sentence based on an unproven loss and false statements to the FBI; and (4) relying on clearly erroneous factual findings to fashion his sentence. Isler also asserts that the district court imposed a substantively unreasonable sentence.

A.

"Procedural errors include 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" United States v. Godfrey, 863 F.3d 1088, 1094-95 (8th Cir. 2017) (citation omitted). Although we generally review the sentence under the abuse-of-discretion standard, "[w]here, as here, the defendant fails to object timely to a procedural sentencing error, the error is forfeited and may only be reviewed for plain error." United States v. Thigpen, 848 F.3d 841, 847 (8th Cir. 2017).[2] "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." Id. (citation omitted).

---

[2]Isler asserts that plain error review does not apply to his arguments, relying on United States v. Wiley, 509 F.3d 474 (8th Cir. 2007), where we held that a defendant does not forfeit a claim of unreasonableness by failing to object after a sentence has been imposed and "where the defendant first learns of the district court's intention to vary upward . . . when the court pronounces the final sentence." Id. at 476. But this rule applies only to claims regarding substantive unreasonableness; "[p]rocedural sentencing errors are forfeited, and therefore may be reviewed only for plain error, if the defendant fails to object in the district court." United States v. Burnette, 518 F.3d 942, 946 (8th Cir. 2008). Because Isler did not object at sentencing to any of the grounds he now asserts constitute procedural error, we apply a plain error standard of review.

Isler's first argument, that the district court failed to address Isler's arguments against an above-Guidelines-range sentence, is simply unsupported by the record. During the sentencing hearing, Isler argued that, because the loss could not be adequately calculated, the government failed to meet its burden of proof, and he should not be held responsible for any greater loss than the agreed-to minimal sum contained in the PSR. In response to this argument, the district court provided the following explanation:

> Well, gain or loss is not the only way to determine if a crime is serious. It's certainly easy, and many of the white-collar guidelines use that. But I don't see this case as being weakened by the government asking for a departure or a variance. Departures are commonly used where there is an unusual case, a case that falls outside the heartland and just doesn't fit neatly into this little model that the Sentencing Commission has put together. Same way with the variance. I don't see it as a weakness. I think it is an acknowledgement that this is an unusual case. And so the Court is encouraged to look at all the 3553(a) factors, including any guideline computation, and try to get to a disposition where the sentence is sufficient but not greater than necessary to achieve the goals of sentencing.

R. Doc. 45, at 80-81. And in the second part of the sentencing hearing, the district court explicitly stated, "[A]lthough I considered each and every argument made, I may not address each and every point of those in arriving at my decision[.]" R. Doc. 53, at 1. We are satisfied this record demonstrates that the district court considered and addressed Isler's argument regarding the government's purported inability to meet its burden of proof on the loss amount. See United States v. Keating, 579 F.3d 891, 893 (8th Cir. 2009) ("[W]here the district court heard argument from counsel about specific § 3553(a) factors, we may presume that the court considered those factors."); see also United States v. Overbey, 696 F.3d 702, 705 (8th Cir. 2012) ("In explaining the sentence the district court need only 'set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority.'" (alterations in

-7-

original) (citation omitted)). We thus conclude the district court committed no error, much less one that was plain, in considering Isler's arguments.

Isler's second contention, that the district court failed to adequately explain its deviation from the Guidelines range, is similarly without merit. It is clear the district court: (1) concluded that the loss and intended loss were large; (2) did not believe any of the loss-calculation methods presented by the government adequately measured the loss; and (3) determined that, where the evidence demonstrated the loss was significant but incapable of ascertainment with sufficient certainty, the Guidelines range underrepresented the severity of the offense. In addition, the district court stated:

> As the parties would acknowledge, this is an unusual case. I find the seriousness of the crime is not captured in the advisory guideline calculation. And as we discussed in the first session of this sentencing, although the defendant admits that his crime had a financial impact on the victim corporation, both the parties and the Court have concluded that calculating the loss to the victim for purposes of computing an advisory guideline range with any degree of accuracy is just not possible.

R. Doc. 53, at 1. The district court also noted that Isler's criminal history showed a lack of respect for the law, that his colloquy at sentencing suggested a minimization of his criminal conduct, and that the record here, unlike other theft-of-trade-secrets cases, demonstrated that Isler had a comprehensive understanding of his duty of confidentiality to DuPont. The district court clearly explained the basis for the upward variance, so we find no procedural error in this regard. See United States v. Washington, 515 F.3d 861, 866-67 (8th Cir. 2008) (finding no procedural error in district court's explanation of sentence where district court acknowledged Guidelines range accounted for conduct to an extent but did not adequately reflect the seriousness of the conduct). We thus conclude the district court committed no error, much less one that was plain, in explaining its reasoning for varying upwards.

Isler next asserts that the district court misapplied the Guidelines by increasing his sentence based on an incalculable loss and his false statements to the FBI. This argument merely voices Isler's disagreement with the district court's decision to vary upward based on the inability to properly ascertain DuPont's losses. Indeed, Isler raised no objection to the calculated 0-6 month Guidelines range and offers no argument suggesting that the district court arrived at an erroneous calculation of his Guidelines range. And, to the extent that Isler's argument is premised on a challenge to the district court's decision to vary upwards based on the 18 U.S.C. § 3553(a) factors, "[w]e will not sustain a procedural challenge to the district court's discussion of the 18 U.S.C. § 3553(a) sentencing factors by a defendant [like Isler] who did not object to the adequacy of the court's explanation at sentencing." United States v. Williamson, 782 F.3d 397, 399 (8th Cir. 2015) (first alteration in original) (citation omitted). The district court thus committed no error in its application of the Guidelines to formulate Isler's sentencing range.

Finally, Isler asserts that the district court relied on clearly erroneous facts as a basis to increase his sentence, specifically asserting the district court erroneously found (1) that Isler agreed his case was "unusual"; (2) that DuPont lost customers as a result of Isler's conduct; and (3) that Isler "repeatedly lied" to the FBI and was similarly untruthful with his father. Isler's contentions fail to satisfy the stringent standard of plain error review because the district court's factual findings are amply supported by the record. And, even assuming the district court did rely on clearly erroneous facts, there is simply no evidence to demonstrate that these facts constituted a plain error affecting Isler's substantial rights. "To demonstrate an effect on substantial rights, [the defendant] must show a reasonable probability that but for the error, he would have received a more favorable sentence." United States v. Cottrell, 853 F.3d 459, 463 (8th Cir. 2017) (citation omitted).

First, as to Isler's argument that the district court erroneously stated he agreed it was an "unusual" case, when viewing the record, it is apparent that the district court was merely characterizing Isler's counsel's argument that the case was "an interesting case" with "many curves and nuances," rather than relying on this as an

admission to warrant an upward variance. And, even if the district court had not stated Isler agreed the case was unusual, the record offers no suggestion that this difference alone would have resulted in a different sentence. Next, as to Isler's argument regarding the purportedly erroneous statements that DuPont lost customers, Isler repeatedly lied to the FBI, and was untruthful to his father, the record, which includes Isler's stipulation that DuPont suffered a loss from his conduct, his admission that he lied to the FBI, and the false explanation he provided his father as to why he had DuPont files on his personal computer, provide a sufficient basis for the district court's factual determinations. And, again, these factual determinations were immaterial to the district court's ultimate decision, especially where the district court repeatedly stated that its primary concern was the Guidelines range did not account for the severity of the crime of theft of trade secrets when the precise measure of the large loss to DuPont was incapable of ascertainment. Because the factual determinations were not integral to the district court's decision to vary upwards, Isler has failed to show that they impacted his ultimate sentence. Thus, for each of these alleged errors, Isler cannot show that "but for the error, he would have received a more favorable sentence." Id. (citation omitted). The district court committed no error in its factual findings as it related to its decision to vary upwards in imposing Isler's sentence. The district court thus committed no procedural error in fashioning Isler's sentence.

B.

We next consider Isler's claim that the district court imposed a substantively unreasonable sentence. Isler asserts that the district court gave significant weight to improper and irrelevant factors, including Isler's history of multiple traffic violations and his over-two-decades-old drug conviction; gave little to no weight to mitigating factors, including Isler's previous rehabilitation from a drug-abuse condition; and committed a clear error in judgment by increasing Isler's sentence where the loss could not be properly calculated. As stated above, the deferential abuse-of-discretion standard applies to Isler's claim of substantive unreasonableness. A district court abuses its discretion when it "(1) 'fails to consider a relevant factor that

should have received significant weight'; (2) 'gives significant weight to an improper or irrelevant factor'; or (3) 'considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" Feemster, 572 F.3d at 461 (citation omitted). However, "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." Id. at 464 (citation omitted).

Isler first challenges the district court's consideration of his past conduct, including a history of multiple traffic infractions and a drug conviction which was over two decades old. Isler asserts that because these offenses are instances of minor criminal conduct unrelated to his present offenses of conviction, the district court improperly relied upon them in imposing an upward variance. Although minor traffic offenses "standing alone are not particularly serious, and bear no similarity to the instant charges," they may still indicate to the district court "that leniency has not been effective." United States v. Herr, 202 F.3d 1014, 1017 (8th Cir. 2000) (citation omitted). "Even minor crimes may show a likelihood of recidivism if they portray a defendant who is particularly incorrigible." United States v. Taylor, 864 F.3d 851, 852 (8th Cir. 2017) (per curiam). Here, the district court considered Isler's record of traffic infractions as evidence of a history of non-compliance with the law. Indeed, the district court stated as much, remarking that it was "not very impressed with being convicted of speeding 12 times, and those are not old convictions. When somebody keeps doing this, it appears to me they have no respect for the law." R. Doc. 45, at 81. Similarly, the district court was permitted to consider evidence of Isler's past drug conviction. Although the drug conviction was nearly two decades old, it was particularly relevant to the issue of Isler's lack of respect for the law where Isler failed to report for a drug test as required while on pre-trial release. The district court thus did not err in considering Isler's traffic infractions and past drug conviction in fashioning his sentence.

Isler next asserts the district court abused its discretion by giving inadequate weight to mitigating factors, specifically his voluntary participation and success in a drug rehabilitation program. But a district court has "wide latitude" to assign weight

to sentencing factors, and "[t]he district court may give some factors less weight than a defendant prefers or more weight to the other factors, but that alone does not justify reversal." United States v. Moua, 895 F.3d 556, 560 (8th Cir. 2018) (per curiam) (citation omitted). The district court did not err by utilizing its wide latitude in assigning weight to specific sentencing factors.

Isler finally argues that the district court abused its discretion by varying upwards in imposing its sentence. Specifically, Isler argues that the district court set a dangerous precedent by erroneously varying upwards based on the government's inability to prove DuPont's loss and that this error amounted to a clear error of judgment in considering the § 3553(a)(6) factor of the need to avoid unwarranted sentencing disparities. Although "[w]e may consider the extent of any deviation from the guideline range, . . . Gall forbids requiring proportional justifications for variances from the range, and even extraordinary variances do not require extraordinary circumstances." United States v. Johnson, 916 F.3d 701, 703 (8th Cir.) (citation omitted), cert. denied, 139 S. Ct. 2657 (2019). Here, the district court's upward variance was clearly motivated by its conclusion that the Guidelines range underrepresented the seriousness of the offense due to the court's inability to assign a precise figure to DuPont's significant loss. The district court did not impose a disproportionate sentence in the face of significant Eighth Circuit case law dictating the parameters of an appropriate sentence in similar situations. Instead, it merely imposed a fact-specific sentence after considering the unique circumstances of this case. Nothing in the record demonstrates that the district court imposed a disproportionate sentence for Isler's crimes. The district court thus did not impose a substantively unreasonable sentence.

III.

For the foregoing reasons, we affirm.

_____