# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1899
_____

United States of America

*Plaintiff - Appellee*

v.

Kelshawn Markell Marshall

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: March 15, 2021
Filed: June 28, 2021
[Unpublished]
_____

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.
_____

PER CURIAM.

Kelshawn Markell Marshall appeals the district court's[1] imposition of a 54-month sentence following his guilty plea to one count of distribution of a controlled substance near a protected location. Marshall contends that the district court erred

_____

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

by departing upward based on its erroneous factual findings. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

Following an investigation by the Dubuque, Iowa Drug Task Force, which included several controlled buys and a search of Marshall's residence, a grand jury indicted Marshall on four counts of distribution of a controlled substance near a protected location, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860(a). Marshall entered into a plea agreement and pled guilty to one of the four counts, agreeing to a base offense level of at least 14. Prior to sentencing, the government requested an upward departure or, in the alternative, an upward variance, which Marshall opposed. At the sentencing hearing, the district court acknowledged Marshall's objections to facts contained in the Presentence Investigation Report (PSR), noting that there were three factual disputes on which it would rule: (1) whether Marshall intimidated a government cooperator; (2) whether Marshall was involved in a March 16, 2017 shooting; and (3) whether Marshall was involved in an April 9, 2017 shooting. The district court also acknowledged that Marshall's PSR calculated, due to drug quantity and the protected location (i.e., within 1,000 feet of a college) in which Marshall distributed and possessed those drugs, a base offense level of 16; that Marshall pled guilty and was therefore awarded a three-level reduction for timely acceptance of responsibility; that the PSR scored Marshall's criminal history with 16 points, resulting in a criminal history category of VI; and that with a total offense level of 13 and a criminal history category of VI, Marshall's advisory Guidelines range was 33 to 41 months imprisonment.

In support of its motion for an upward departure (or, alternatively, upward variance), the government offered testimony from several witnesses. Ramiro Montes, a sergeant with the Illinois State Police, testified that, after finding out a subject named R.W. was cooperating with the government and testifying against a friend of Marshall's in a first-degree murder case, Marshall posted a photograph of R.W. on social media showing R.W. in the police interrogation room, exposing R.W.

as a cooperator. Sergeant Montes also described a report R.W.'s mother made in which she accused Marshall of threatening her.

Nick Schlosser, a police officer with the City of Dubuque, Illinois Police, testified that Marshall posted an 18-minute, livestream video of himself on social media in which he discussed an ongoing feud between him and a subject named J.B. When asked to describe the contents of the video, Officer Schlosser explained that Marshall flashed a gun several times; threatened to visit J.B.'s residence and his place of business; and for 18 minutes, threatened and "demeaned" J.B. Officer Schlosser further testified that, less than an hour after Marshall posted the video to his social media page, police officers were dispatched to J.B.'s residence in response to a call reporting that shots that had been fired into the residence. Officers spoke to witnesses at the scene and located bullet holes in J.B.'s residence as well as six, .40-caliber shell casings located outside of J.B.'s residence. Traffic camera footage revealed a Chevy Cruze stopping in front of J.B.'s residence and a passenger getting out and firing at least six shots into the residence. This resulted in multiple muzzle flashes, which the traffic camera footage also captured. Officer Schlosser testified that the footage also showed the vehicle's route, revealing that the vehicle came from the street on which Marshall's mother lived. Officers were later able to identify Marshall's wife as the owner of the Chevy Cruze. Although Marshall maintained that he did not shoot at J.B.'s residence, he admitted that he had driven by J.B.'s residence in his wife's Chevy Cruze the night of the shooting. Officer Schlosser testified that Marshall later pled guilty in state court to being a felon in possession of a firearm in relation to the shooting at J.B.'s residence. Officer Schlosser then testified to a separate, April 9, 2017 incident where Marshall drove his wife's Chevy Cruze past a crowd of people while his brother fired shots from the vehicle into the crowd. Marshall later pled guilty in state court to one count of aiding and abetting carrying weapons in relation to this April 9, 2017 shooting. The district court relied, in part, on Marshall's two state court convictions when calculating his criminal history category.

After hearing this testimony, the district court found that the government proved by a preponderance of the evidence that: Marshall engaged in conduct with the intent to expose R.W. to "hatred, contempt or ridicule" in violation of 720 Ill. Comp. Stat. 5/12-6(a)(5);[2] Marshall was responsible for the March 16, 2017 shooting at J.B.'s residence; and Marshall was driving his wife's vehicle on April 9, 2017, when shots were fired from the vehicle. It then found that Marshall's criminal history score understated the seriousness of his criminal history and his likelihood to reoffend, and the district court departed upward from Marshall's advisory Guidelines range of 33 to 41 months imprisonment to a sentencing range of 46 to 57 months imprisonment. After considering the factors outlined by 18 U.S.C. § 3553(a), the district court sentenced Marshall to 54 months imprisonment. Finally, the district court explained that even if it erred in its decision to depart upward under USSG § 4A1.3(a)(1), it would have imposed the same sentence, varying upward pursuant to the § 3553(a) factors. Marshall now appeals his sentence.

## II.

Marshall argues that the district court made erroneous factual findings and, by relying on those findings, erred in departing upward and in the extent to which it departed upward. Although Marshall does not characterize it as such, we construe his argument to be that the district court procedurally erred.[3] A district court's reliance on clearly erroneous facts constitutes procedural error, United States v. Isler, 983 F.3d 335, 341 (8th Cir. 2020), and because Marshall alleges that the district

---

[2]The district court found that the government failed to show by a preponderance of the evidence that Marshall threatened R.W.'s mother in violation of 720 Ill. Comp. Stat. 5/12-6(a)(1).

[3]Marshall frames his argument as including a challenge to the substantive reasonableness of his sentence, but that argument is limited to his contention that, in the absence of the district court's allegedly erroneous factual findings, his "criminal conduct includes no history of violence." Appellant Br. 16. As such, we construe Marshall's argument as being confined to whether the district court procedurally erred in departing upward.

court did so rely, "[w]e review 'under a clearly erroneous standard . . . [considering] whether the circumstances justifying departure actually exist.'" See United States v. Smith, 681 F.3d 932, 934 (8th Cir. 2012) (second alteration in original) (citation omitted). "Clear error occurs when the district court's finding is '(1) not supported by substantial evidence; (2) based upon an erroneous view of the law; or (3) such that "we are left with the definite and firm conviction that an error has been made."'" United States v. Peeples, 879 F.3d 282, 287 (8th Cir. 2018) (citation omitted).

Marshall cites three factual determinations as being clearly erroneous: (1) that Marshall intimidated a government cooperator; (2) that Marshall was involved in a March 16, 2017 shooting; and (3) that Marshall was involved in an April 9, 2017 shooting. He argues that the district court's departure (or alternatively, variance) based on these facts was in error.

We first look to USSG § 4A1.3(a)(1), which provides, in relevant part, that a district court may depart upward where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." An upward departure is distinct from an upward variance, which is governed by 18 U.S.C. § 3553(a):

> Whereas § 3553(a)(1) and (a)(2)(C) broadly permit the district court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant," USSG § 4A1.3(a)(1) more narrowly permits an upward departure if the defendant's criminal history category under the advisory Guidelines "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."

United States v. Solis-Bermudez, 501 F.3d 882, 886 (8th Cir. 2007) (omission in original) (emphasis omitted).

-5-

Marshall first challenges the district court's finding that he intimidated R.W. Iowa law provides that an individual commits intimidation where:

> with intent to cause another to perform or to omit the performance of any act, he or she communicates to another, directly or indirectly by any means, a threat to perform without lawful authority any of the following acts: . . . (5) [e]xpose any person to hatred, contempt or ridicule.

720 Ill. Comp. Stat. 5/12-6(a)(5).

Marshall alleges that he posted about R.W.'s cooperation on social media not to expose him to hatred, contempt, or ridicule but instead as a mechanism to cope with his feelings about that cooperation. He argues that posting on social media is not the type of communication encompassed by the statute and maintains that a social media post is different from communicating (either directly or indirectly) with R.W. Marshall further argues that because R.W. was not placed in protective custody, threatened, or assaulted, R.W. was never actually exposed to hatred, contempt, or ridicule. However, Marshall misunderstands the statute's plain language, and he is unable to overcome the considerable evidence that the government presented at his sentencing hearing.

Evidence was presented that Marshall's decision to utilize social media was significant: by posting about R.W.'s confidential status on social media, Marshall revealed that status to a large number of persons at once. Marshall's argument that this method of communication is somehow not contemplated by Illinois law is unpersuasive; instead, the statute anticipates "communicat[ion] to another, directly or indirectly *by any means*." Id. (emphasis added). The district court then rejected Marshall's argument that because R.W. was not placed in protective custody, threatened, or assaulted, Marshall could not have violated 720 Ill. Comp. Stat. 5/12-6(a)(5), explaining that the statute does not require such a showing. We agree. Furthermore, Sergeant Montes testified to the dangerous nature of acting as a cooperator, explaining that should a cooperator's confidential status be revealed, it

is possible for that cooperator to be killed.  This alone established that by revealing R.W.'s confidential status with his social media post, Marshall threatened to expose R.W. to hatred, contempt, or ridicule, and it is immaterial that R.W. was not placed in protective custody, threatened, or assaulted.  Therefore, because we find that the district court's finding was supported by substantial evidence and because we are not left with the "definite and firm conviction that an error has been made," see Peeples, 879 F.3d at 287 (citation omitted), we find that the district court did not clearly err.

Marshall next challenges the district court's finding that he was responsible for the March 16, 2017 shooting at J.B.'s residence.  He first emphasizes that the government's theory—that Marshall's wife, who is black, drove him to J.B.'s residence—is contradicted by a witness's description of a white male driver.  While the district court acknowledged that this witness account contradicted the government's theory, it found persuasive evidence that only an hour before the shooting, Marshall had threatened J.B. on social media.  It also found persuasive the traffic camera footage, which placed a car matching that of Marshall's wife at the scene, as well as Marshall's admission that he drove past J.B.'s residence on the night of the shooting.  In light of this evidence, we cannot say that the district court clearly erred in finding that Marshall was responsible for the March 16, 2017 shooting.  See id.

Finally, Marshall argues that the district court clearly erred in finding that shots were fired from Marshall's car on April 9, 2017, and that Marshall was the driver.  Marshall's argument on this issue is quite brief, and he contends only that the district court erred in implicitly finding that he was responsible for more than what he pled guilty to: aiding and abetting carrying weapons.  We disagree.  The district court cited uncontested facts in the PSR that traffic camera footage showed Marshall entering the driver's seat of his wife's Chevy Cruze, and as Marshall drove, muzzle flashes came from the vehicle as persons in a crowd ducked and ran.  The district court also found persuasive Marshall's state court conviction in relation to this incident.  As with the district court's other factual findings, this finding was

-7-

supported by substantial evidence, and we are not left with the "definite and firm conviction that an error has been made," see id. (citation omitted).

In his brief to this Court, Marshall characterizes the district court as having departed *and* varied upward. However, the district court simply departed upward, explaining that should we find its upward departure to be error, it similarly would have varied upward pursuant to § 3553(a). Because are not left with the "definite and firm conviction" that the district court erred and because we find that its factual findings were supported by substantial evidence in the record, see id. (citation omitted), we conclude that the district court did not err, much less clearly err in departing upward. We therefore need not address the variance issue.

III.

For the above-stated reasons, we affirm.

_____